No. 20,491.

SYLVESTER LEE GARRISON *v.*
THE PEOPLE OF THE STATE OF COLORADO.
(378 P. [2d] 401)

Decided January 28, 1963.

Messrs. MELLMAN, MELLMAN & THORN, for plaintiff in error.

Mr. DUKE W. DUNBAR, Attorney General, Mr. FRANK E. HICKEY, Deputy, Mr. JOHN E. BUSH, Assistant, for defendant in error.

*En Banc.*

MR. JUSTICE MCWILLIAMS delivered the opinion of the Court.

SYLVESTER LEE GARRISON was charged by direct information with murder of one Mort Freelander on April 26, 1958, in Denver. On arraignment he pled "not guilty" and "not guilty by reason of insanity at the time of the alleged commission of the crime and since."

On November 27, 1959, a jury returned two verdicts, one finding Garrison sane at the time of the alleged commission of the crime, and the second adjudging him to be guilty of first degree murder and fixing the penalty at death.

Motion for new trial was filed in apt time, argued and then denied, and on January 29, 1960, formal judgment and sentence entered. By writ of error this judgment was affirmed by this Court. See, *Garrison v. People,* 147 Colo. 385, 364 P. (2d) 197.

On January 5, 1962, a few days before he was about to be executed pursuant to this judgment and sentence, Garrison filed a petition in the trial court, generally alleging that he was then insane and had become insane since the date when judgment and sentence was imposed. Attached to his petition was an affidavit by "a physician who is a specialist in mental diseases," stating that in the doctor's opinion Garrison "is insane at the present time."

The trial court stayed Garrison's execution, appointed several psychiatrists to examine him, and eventually entered an order that the issue as to whether Garrison had become insane subsequent to the imposition of judgment and sentence be determined by a jury.

On April 18, 1962, a jury returned a verdict finding

that "Garrison has not become insane since judgment and sentence and is now sane." Motion for new trial was duly filed, but denied. Thereupon the trial court entered a further judgment and sentence directing that Garrison be returned to the State Penitentiary, "there to be executed during the week of October 15, 1962, in accordance with the law." This execution date has been stayed, and by the present writ of error Garrison seeks reversal of this judgment and sentence.

C.R.S. '53, 39-8-6 provides, inter alia, that a person sentenced to death who "becomes and remains insane" after judgment but, of necessity, before the sentence is carried out, shall not be executed "until his recovery from the insanity." This same statute empowers the trial court upon proper showing to impanel a jury to determine "whether the defendant has thus become and then is insane." Said statute also spells out the procedures to be followed in such proceeding, and finally lays down the applicable test of insanity.

As was noted, supra, the trial court, on the showing made by counsel for Garrison, ordered that a jury determine whether Garrison had become insane since the imposition of sentence. The jury determined that Garrison had not become insane and in fact was still sane. Garrison now contends that reversible error was committed in his so-called "second trial."

Garrison assigns as error the fact that the trial court excluded all evidence as to his mental condition as such existed prior to January 29, 1960, that being the date of the entry of the judgment and sentence to death in the original trial. Garrison concedes that under the applicable statute the only issue to be resolved in a proceeding under the statute involved is whether, after judgment and sentence, he has become and remains insane. However, according to Garrison, the trial court misinterpreted *Leick v. People,* 140 Colo. 564, 345 P. (2d) 1054 to the end that it held that under this opinion evidence as to his mental condition as of any time prior to the date of his

sentence was inadmissible, *solely* because it antedated the imposition of judgment and sentence. Garrison urges that evidence of his mental condition prior to January 29, 1960, is admissible, not so much for the purpose of proving his mental condition as of that time, but more for the purpose of throwing light on his true mental condition as of the time of his "second trial."

Specifically, Garrison advised the trial court that under his theory of the case his present mental illness was a hereditary matter and in this regard sought to bring before the jury his entire family history, including the fact that he had brothers and sisters who were insane. Further, he theorized that his mental condition as of the time of his "second trial" was not an "over night thing," but rather the logical culmination of a long, drawn-out process of mental deterioration. In support thereof he disclosed a head injury occurring in 1950, and sought to establish that in 1953 he was not only the subject of a judicial inquiry as to his mental condition in a lunacy proceeding in the County Court of Denver, but was in fact adjudicated a mental incompetent and committed to the State Hospital in Pueblo. To further substantiate his claim, he sought also to show that after his release from the State Hospital he had been hospitalized and treated in Denver General Hospital for his mental condition, as well as also receiving out-patient treatment at the same hospital for the same ailment. The trial court very painstakingly refused to permit Garrison to show the foregoing evidentiary matters and an examination of the entire record convinces us that this ruling was based solely on the ground that in the view of the trial court the *Leick* decision precluded the admission of any and all evidence as to Garrison's mental condition as of any time prior to January 29, 1960. In our view, however, this ruling was erroneous and necessitates another trial on the issue as to whether Garrison has become and remains insane since January 29, 1960.

In the *Leick* case it was said that "the sole and only

issue to be determined by the jury in this proceeding was the defendant's sanity or lack thereof occurring subsequent to conviction and sentence in the criminal action." But this language is not tantamount to a declaration that any and all evidence of the mental condition of the defendant prior to "conviction and sentence in the criminal action," however relevant it may be to his present mental state, is inadmissible solely because it occurred prior to such date.

As to the wide range of evidence properly to be admitted in a trial where a person's sanity is in issue, see 20 Am. Jur. evidence §349, page 324, where it is stated:

"Considerable latitude is allowed by the courts in admitting evidence which has a tendency to throw light on the mental condition of the defendant at the time of the commission of the crime, provided the proof tends to prove or disprove the issue involved. Every act of the defendant's life relevant to the issue is admissible in evidence when the defense of insanity, general or partial, is set up. It is proper, where the sanity of the defendant is involved, to go into an inquiry concerning the mental condition of the defendant both before and after the commission of the act, provided the inquiry bears such relation to the person's condition of mind at the time of the crime as to be worthy of consideration in respect thereto."

True, the foregoing presupposes a plea of not guilty by reason of insanity at the time of the alleged commission of the crime. But in logic there is no valid reason for applying a different rule where the issue is whether a person "has become and remains" insane since the imposition of sentence. In either event the ultimate issue is the sanity, or lack of it, of a particular individual as of a date certain.

We now hold that if evidence of the general type alluded to, supra, is otherwise competent, relevant and material, it is not inadmissible solely because it occurred prior to the time judgment and sentence entered in the

criminal proceeding, or because it relates to his mental condition prior to such time.

The Attorney General does not contend that the trial court was correct in ruling that evidence as to the mental condition of Garrison prior to January 29, 1960, is inadmissible solely because it antedates the entry of judgment and sentence. Rather he tacitly concedes that the reason for excluding the evidence was invalid, but suggests that there were inadequate offers of proof in connection with the proffered testimony and that the line of evidentiary matters sought to be received was objectionable for other reasons. In our view, permeating the entire record is the inescapable fact that on repeated occasions throughout the entire trial, the trial court consistently excluded all evidence as to Garrison's mental condition prior to January 29, 1960, in the mistaken belief that the Leick case precluded its reception, inasmuch as the proffered evidence antedated the date of the judgment and sentence.

██ One final ruling of the trial court perhaps best illustrates the prejudicial error committed. One Dr. B., a specialist in mental diseases, was called by the State as its witness. Dr. B. testified that pursuant to order of court he examined Garrison on two separate occasions in January 1962 and testified that in his opinion based on these two examinations Garrison was sane as of the date of trial. On cross-examination counsel for Garrison sought to show, for the obvious purpose of trying to impeach the witness's testimony, that this very Doctor was a member of the lunacy commission which had previously not only conducted a hearing as to Garrison's mental condition, but actually adjudicated him to be an incompetent and committed him to the State Hospital. This was proper cross-examination, but the trial court refused to permit it because it antedated January 29, 1960. Clearly this ruling was erroneous.

In the interest of an orderly and expeditious administration of justice, we regret the necessity of another

trial with attendant delay and expense. However, the legislature has declared that an insane person shall not be executed in Colorado, and has decreed that there may be a jury trial on the issue of whether a defendant subject to the imposition of the death sentence, has become and remains insane. The trial court ordered that a jury determine this issue, and in our view there was serious, prejudicial error committed in the trial thereof. This being the state of the record, we have no alternative but to reverse the judgment and remand the cause for another trial.

The judgment is reversed.

MR. JUSTICE PRINGLE not participating.