Nicholas James JONES, Petitioner,

v.

The DISTRICT COURT IN AND FOR the TWENTY–FIRST JUDICIAL DISTRICT and the Honorable James J. Carter, one of the Judges thereof, Respondent.

No. 80SA315.

Supreme Court of Colorado, En Banc.

Sept. 29, 1980.

J. Gregory Walta, State Public Defender, Craig L. Truman, Chief Deputy Public Defender, Ilene P. Buchalter, Nick R. Massaro, Deputy State Public Defenders, Denver, for petitioner.

Terrance Farina, Dist. Atty., James R. Alvillar, Chief Deputy Dist. Atty., Elizabeth K. Jordan, Deputy Dist. Atty., Grand Junction, for respondents.

Lawrence J. Schoenwald, Denver, for amicus curiae Colorado Criminal Defense Bar, Inc.

QUINN, Justice.

The petitioner–defendant, Nicholas James Jones (petitioner), filed this original proceeding seeking prohibitory relief under C.A.R. 21. He protests the rulings of the respondent court in requiring his attorney to argue pending motions on capital punishment–issues in the face of the petitioner's claimed incompetency and in refusing to order a competency examination or make further inquiry into his mental state under section 16–8–111(1), C.R.S. 1973 (now in 1978 Repl. Vol. 8). We issued a rule to show cause and now make the rule absolute.

The petitioner is charged in the district court with felony–murder, section 18–3–102(1)(b), C.R.S. 1973 (1978 Repl. Vol. 8), and aggravated robbery, section 18–4–302, C.R.S. 1973 (1978 Repl. Vol. 8). He pled not guilty and the case was set for a jury trial commencing on July 28, 1980. The petitioner filed motions to strike the death penalty from the jury's consideration because of its alleged unconstitutionality, and to preclude the prosecution from qualifying the jury for capital punishment. These motions were set for hearing on July 3, 1980. Immediately prior to the commencement of the hearing, the petitioner's attorney filed a motion to suspend the hearing pending a competency examination of petitioner at the Colorado State Hospital. Petitioner's attorney stated to the court that petitioner was unable to assist in his defense and had manifested a deteriorating mental condition which, in the attorney's opinion, required a temporary suspension of proceedings until a psychiatric examination could be conducted.[1] The court denied the motion to sus-

---

1. The petitioner's attorney stated to the court that he had perceived a significant change in petitioner which was similar in symptomology to the Ganser syndrome.

The Ganser syndrome is a hysterical reaction characterized by the failure to answer even simple questions correctly. *J. McDonald, Psychiatry and The Criminal* 192 (2d ed. 1969). "Other features . . . may include bizarre behav-

pend proceedings, refused to order a psychiatric examination, and made a preliminary finding that the petitioner was competent. The preliminary finding was not supported by any psychiatric report or other facts appearing of record. The court did not designate a period within which petitioner could request a statutory hearing on a final determination of competency as provided in section 16–8–111(2), C.R.S. 1973 (now in 1978 Repl. Vol. 8). Upon the summary denial of the request for a psychiatric examination, petitioner's attorney offered to be sworn to testify about the petitioner's mental condition. The court rejected the offer and ordered the attorney to "proceed to a determination of the motions or suffer the adverse consequences."[2] Thereupon, the petitioner successfully petitioned this court for a rule to show cause and a stay of pending proceedings.

The respondent argues that since the petitioner's attorney requested a determination of his client's incompetency, the petitioner had the burden of establishing incompetency in the first instance and, in the absence of evidence of incompetency, the respondent court properly made a determination of competency.[3] This argument, however, misconstrues the nature of petitioner's initial request on July 3, 1980, when the issue of competency was first raised.

The petitioner's attorney on that occasion requested the respondent to suspend the proceedings pending a determination of competency and to order a competency examination by a psychiatrist.[4] Petitioner's attorney was not requesting a determination of the competency issue *instanter.* Rather, he relied on section 16–8–111(1), C.R.S. 1973, which authorizes a competency examination if the court "feels that the information available to it is inadequate for making such [a preliminary] finding." The proper inquiry in this original proceeding, therefore, is whether, under the circumstances of this case, the respondent court exceeded its jurisdiction or abused its discretion when it entered forthwith a preliminary finding of competency without setting a time within which petitioner could request a statutory hearing on a final determination of competency, ordered petitioner's attorney to argue the motions on capital punishment or suffer their denial, and denied his request for a competency examination. *See generally McDonald v. District Court,* 195 Colo. 159, 576 P.2d 169 (1978); *Hunter v. District Court,* 190 Colo. 48, 543 P.2d 1265 (1975); *Maestas v. District Court,* 189 Colo. 443, 541 P.2d 889 (1975); *People ex rel. Farina v. District Court,* 185 Colo. 118, 522 P.2d 589 (1974); *People v. Quinn,* 183 Colo. 245, 516 P.2d 420 (1973). We

---

ior, auditory and visual hallucinations, delusions, disorientation and hysterical convulsions, paralyses or sensory disturbances." *Id.* "Onset of the symptoms follows psychological stress, and, in the case of prisoners awaiting trial, the *unconscious motivation* is to avoid responsibility for the crime by appearing insane." *Id.* (emphasis added). Persons with Ganser syndrome "may also suffer from mental deficiency or organic dementia" and the syndrome "may occur in the setting of a schizophrenic illness." *Id.* at 193–94.

2. Petitioner's attorney initially interpreted the court's reference to "adverse consequences" as a contempt warning and requested a brief continuance to consider the appropriate course of action in view of what the attorney perceived to be "a head–on ethical collision." The ethical problem apparently centered on the attorney's obligation to obey the court's order and his competing obligation not to proceed to a hearing on important motions when his client was not competent. The court later stated that the "adverse consequences" would be that the

pending motions on capital punishment–issues would be denied without further hearing.

3. The statutory procedures relating to competency require only that the question of mental competency to proceed be "raised" by the prosecution, defense or the court. Section 16–8–110(2), C.R.S. 1973 (1978 Repl. Vol. 8). There is no "burden of proof" requirement in raising this issue. The only statutory reference to burden of proof occurs in the context of a hearing on a final determination of competency, and that burden is by a preponderance of evidence on the party asserting incompetency. Section 16–8–111(2), C.R.S. 1973.

4. " 'Competency examination' means a court–ordered examination of a defendant either before, during, or after trial, directed to developing information relevant to a determination of his competency to proceed at a particular state of the criminal proceeding." Section 16–8–102(1), C.R.S. 1973 (now in 1978 Repl. Vol. 8).

conclude that the actions of the respondent court were in excess of its jurisdiction and constituted an abuse of its discretion. Accordingly, prohibitory relief is necessary to prevent any future miscarriage of justice implicit in requiring an arguably incompetent defendant to proceed to trial on a capital offense.

## I.

■ A person is incompetent to proceed when he "is suffering from a mental disease or defect which renders him incapable of understanding the nature and course of the proceedings against him or of participating or assisting in his defense or cooperating with his defense counsel." Section 16–8–102(3), C.R.S. 1973 (now in 1978 Repl. Vol. 8). Putting an accused on trial while he is incompetent violates due process of law. *Drope v. Missouri*, 420 U.S. 162, 95 S.Ct. 896, 43 L.Ed.2d 103 (1975); *Pate v. Robinson*, 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966); *United States v. Masthers*, 539 F.2d 721 (D.C.Cir. 1976). Similarly, due process is violated when a trial court refuses to accord an accused an adequate hearing on his claimed incompetency to stand trial. *Pate v. Robinson, supra* ; *Davis v. State of Alabama*, 545 F.2d 460 (5th Cir. 1977); *cert. denied*, 431 U.S. 957, 97 S.Ct. 2682, 53 L.Ed.2d 275 (1977). These principles are so basic to the concept of fundamental fairness that a claim of incompetence to stand trial on the issue of guilt cannot be waived. *Drope v. Missouri, supra*; *Pate v. Robinson, supra*; *Davis v. State of Alabama, supra*. In short, an incompetent person cannot be tried until that condition has abated. *Parks v. District Court*, 180 Colo. 202, 503 P.2d 1029 (1972).

■ Our statutory procedures provide safeguards to insure against the prosecution of an incompetent defendant. Section 16–8–101 *et seq.*, C.R.S. 1973 (1978 Repl. Vol. 8); *Parks v. District Court, supra*. Section 16–8–110(2), C.R.S. 1973 (1978 Repl. Vol. 8), provides that the issue of competency may be raised by defense counsel, the prosecutor, or the court. And when a doubt is entertained about the mental competence of an accused, both the court and counsel are duty bound to raise the issue and seek a reliable determination of it before further proceedings are held. *Parks v. District Court, supra*. The question of competency may be raised at any time and, if possible, it should be brought to the court's attention prior to the commencement of a particular proceeding. Section 16–8–110(2)(b), C.R.S. 1973 (1978 Repl. Vol. 8); *see Schwader v. District Court*, 172 Colo. 474, 474 P.2d 607 (1970). When the issue is raised, section 16–8–111(1), C.R.S. 1973, requires a two–phased procedure involving a preliminary finding and a final determination. If the court believes that the information is inadequate for a preliminary finding, it has two alternatives. It may either order a competency examination or such other investigation as it deems advisable; or it may make a preliminary finding without an examination or additional investigation. Section 16–8–111(1), C.R.S. 1973. In either instance, section 16–8–111(2), C.R.S. 1973, outlines the procedures after the preliminary finding is made:

"The court shall immediately notify the prosecuting attorney and defense counsel of the preliminary finding. If neither the prosecuting attorney nor defense counsel requests, in writing, a hearing within a time limit set by the court, the preliminary finding becomes a final determination. Upon the timely written request of either the prosecuting attorney or defense counsel, the court shall hold a hearing and may commit the defendant for a competency examination prior to the hearing if adequate psychiatric information is not already available. At the conclusion of the hearing, the court shall make a final determination. Upon the request of either party, the judge shall set the matter for hearing before another judge. At any hearing held pursuant to this subsection (2), the burden of submitting evidence and the burden of proof by a preponderance of the evidence are upon the party asserting the incompetency of the defendant."

## II.

■ In this case the respondent court exceeded its jurisdiction when it made a preliminary finding of competency and

simultaneously ordered the petitioner's attorney to present his motions on the capital punishment–issues without affording the petitioner the opportunity, within a time designated by the court, to request a statutory hearing on a final determination of competency in accordance with section 16–8–111(2), C.R.S. 1973. The respondent court's peremptory finding of competency and disregard of statutory procedures resulted from an erroneous view that the petitioner's competency was immaterial to the pre–trial stages of the case and could be raised "only at trial, sentencing or execution . . . ."

■ The prohibition against prosecuting an incompetent defendant is not restricted to the trial and post–trial stages of the case. *E. g., Parks v. District Court, supra*, (competency raised and determined before sanity trial); *Gomez v. District Court*, 179 Colo. 299, 500 P.2d 134 (1972) (competency raised and determined before preliminary hearing); *Schwader v. District Court, supra* (competency raised and determined before preliminary hearing). Rather, the prohibition attaches at the commencement of formal criminal proceedings and continues throughout the execution and satisfaction of the sentence. *E. g., Hampton v. Tinsley*, 240 F.Supp. 213 (D.Colo. 1965), *rev'd on other grounds, sub nom. Patterson v. Tinsley*, 355 F.2d 470 (10th Cir. 1966); *Garrison v. People*, 151 Colo. 388, 378 P.2d 401 (1963). Oftentimes, pre–trial motions bear as significantly on the ultimate outcome of the case as the trial itself. It would be the antithesis of due process to resolve significant pre–trial motions on capital punishment in the absence of the accused or, what is equally egregious, in the presence of an accused who is mentally deranged to the extent of being incapable of understanding the significance of the proceedings against him or of cooperating in his own defense. *Drope v. Missouri, su-*

*pra; Pate v. Robinson, supra; Davis v. State of Alabama, supra; see also Gomez v. District Court, supra; Schwader v. District Court, supra.* An accused's competency must be assessed with specific reference to the nature of the proceeding with which he is confronted and the appropriate level of understanding necessary for meaningful cooperation with his attorney. *United States v. Masthers, supra.* Thus, under the circumstances present here, the respondent court was obliged to defer the hearing on pending motions until a final determination of petitioner's competency could be made in accordance with the statutory procedures outlined in section 16–8–111(2), C.R.S. 1973.

### III.

■ Additionally, the respondent court abused its discretion in summarily rejecting defense counsel's request for a competency examination which was supported by the statement of counsel describing his client's inability to assist in his defense due to a deteriorating mental condition. The court did not articulate any reason for its refusal to order a competency examination. The attorney's request for examination was a bona fide solicitation of judicial assistance and was made sufficiently in advance of trial to permit a timely resolution of the issue before the trial date.[5] The representation in support of the request likewise was made in good faith and was backed by an offer from defense counsel to testify about the petitioner's condition.

■ When defense counsel has reason to believe the accused is incompetent, he is obliged to bring this matter to the court's attention even though it might be to the disadvantage of the accused. *E. g., Pate v. Robinson, supra; see also Labor v. Gibson*, 195 Colo. 416, 578 P.2d 1059 (1978). The trial judge under these circumstances must rely to a great extent on defense counsel to bring the competency issue into

---

**5.** Petitioner's attorney requested that the competency examination be conducted at the state hospital at Pueblo, Colorado. The court, however, has discretion to order the examination there, at some other public institution, or at the jail where the accused is confined. Section 16–8–106(1), C.R.S. 1973 (now in 1978 Repl. Vol. 8). We recognize the court's need for discretion in designating the place and length of such examination, particularly in view of previously scheduled hearing and trial dates for a given case. There is no pending trial date on this case at this time.

focus. *Drope v. Missouri, supra.* In this regard it has been cogently observed that "counsel's first–hand evaluation of a defendant's ability to consult on his case and to understand the charges and proceedings against him may be as valuable as an expert psychiatric opinion on his competency." *United States v. David,* 511 F.2d 355, 360 (D.C.Cir. 1975). Attorneys are officers of the court and "when they address the judge solemnly upon a matter before the court, their declarations are virtually made under oath."[6] *Holloway v. Arkansas,* 435 U.S. 475, 486, 98 S.Ct. 1173, 1179, 55 L.Ed.2d 426, 435 (1978), quoting *State v. Brazile,* 226 La. 254, 266, 75 So.2d 856, 860–61 (1954). Thus, under the circumstances present here, the defense attorney's representation to the court raised a substantial issue on the petitioner's competency to stand trial, and the respondent court's refusal to make any inquiry into that issue or to receive any evidence in that regard constituted an abuse of discretion. *Drope v. Missouri, supra; Pate v. Robinson, supra.*

In view of the nature of the proceedings still pending against petitioner, the gravity of the charges, and the representations of his attorney about petitioner's mental state, a competency examination affords the most effective means for an expeditious and reliable determination of petitioner's competency to stand trial. Accordingly, the rule to show cause is made absolute and the cause is returned to the respondent court with directions to order a competency examination and to resolve petitioner's competency in accordance with the appropriate statutory procedures and the views herein expressed.

LEE, J., does not participate.

---

**6.** Ordinarily, a lawyer should not testify as a witness in pending litigation on a contested matter. *Code of Professional Responsibility,* DR5 101(B) and DR5–102; *see* Annot., 9 A.L.R. Fed. 500, *Attorney as Witness for Client in Federal Case* (1971).

There is a split of authority on the propriety of a defense attorney testifying as a witness on his client's incompetency. *Gunther v. United States,* 230 F.2d 222 (D.C.Cir. 1956), disapproves the practice because it is likely to implicate the attorney–client privilege:

"If trial counsel in a criminal case could be called by the Government and asked to give an opinion as to the accused's competency and ability to assist in the defense, he could necessarily also be asked for the factual data upon which he premised his opinion. These questions would open to inquiry by the Government the . . . relationship between the accused and his counsel. Such revelations would be a violation of the attorney–client privilege and would also invade an accused's right to counsel in the trial of the criminal charge." 230 F.2d at 223–24.

*United States v. Kendrick,* 331 F.2d 110 (4th Cir. 1964), takes a contrary position, at least where the testimony is limited to observations about the client's level of awareness and his general demeanor:

"Such things are observable by anyone who talked with the client, and there is nothing, in the usual case, to suggest that the client intends his attorney's observations of such matters to be confidential. In short, the privilege protects only the client's confidences, not the things which, at the time, are not intended to be held in the breast of the lawyer, even though the attorney–client relation provided the occasion for the lawyer's observation of them." 331 F.2d at 114.

Allowing the accused's attorney, as an officer of the court, to make a good–faith representation regarding his client's competency obviates the danger of intruding on any privileged communication. Of course, evidence on the competency issue may be presented through the testimony of other witnesses when the matter is first raised. Section 16–8–109, C.R.S. 1973, (now in 1978 Repl. Vol. 8).