STATE of Wisconsin, Plaintiff-Respondent,

v.

Jerry J. MEEKS, Defendant-Appellant-Petitioner.

Supreme Court

*No. 01–0263–CR. Oral argument March 5, 2003.—
Decided July 11, 2003.*

2003 WI 104

(Also reported in 666 N.W.2d 859.)

For the defendant-appellant-petitioner there was a brief by *Christopher T. Van Wagner* and *Van Wagner & Woods, S.C.,* Madison, and oral argument by *Christopher T. Van Wagner.*

For the plaintiff-respondent the cause was argued by *Eileen W. Pray,* assistant attorney general, with whom on the brief was *Peggy A. Lautenschlager,* attorney general.

¶ 1. N. PATRICK CROOKS, J. Jerry J. Meeks (Meeks), seeks review of a court of appeals' decision affirming a circuit court judgment convicting him of felony murder—armed robbery as a habitual criminal. At issue is whether an attorney's opinions, perceptions, and impressions relating to a former client's mental competency are confidential communications within the meaning of the attorney-client privilege, Wis. Stat. § 905.03(2) (1997–98),[1] and SCR 20:1.6, and therefore cannot be revealed without the consent of the client.

¶ 2. We reverse the decision of the court of appeals and hold that an attorney's opinions, perceptions, and impressions relating to a former client's mental competency fall within the definition of a confidential communication pursuant to Wis. Stat. § 905.03(2) and SCR 20:1.6. As a result, such communications may not be revealed without the consent of the client. We

---

[1] Wisconsin Stat. § 905.03(2) provides:

General rule of privilege. A client has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made for the purpose of facilitating the rendition of professional legal services to the client: between the client or the client's representative and the client's lawyer or the lawyer's representative or between the client's lawyer and the lawyer's representative or by the client or the client's lawyer to a lawyer representing another in a matter of common interest or between representatives of the client or between the client and a representative of the client or between lawyers representing the client.

All references to the Wisconsin Statutes are to the 1997–98 version unless otherwise noted.

798

therefore remand this matter to the circuit court for a nunc pro tunc competency hearing.

## I. FACTUAL AND PROCEDURAL BACKGROUND

¶ 3. The facts are undisputed. On December 6, 1998, Meeks was involved in a robbery and murder in Milwaukee. The police arrested Meeks on December 12, 1998, and a criminal complaint was filed that same day charging Meeks with felony murder as a habitual criminal. Meeks later pled guilty.

¶ 4. Meeks' counsel first raised the issue of Meeks' competency ten days after his initial appearance. The circuit court ordered a competency examination pursuant to Wis. Stat. § 971.14(2). On February 10, 1999, the court determined Meeks was not competent and committed him to the Department of Health and Family Services for treatment. At a subsequent competency hearing after Meeks had received treatment, based upon testimony from physicians, a parole agent who had previously supervised Meeks, and a public defender who had previously represented Meeks, the circuit court determined Meeks was then competent to proceed.

¶ 5. The focus of this case involves the circuit court decision that Meeks was competent to proceed. After defense counsel raised the question of Meeks' competency to proceed, an initial competency evaluation was ordered which was performed by a psychiatrist, Dr. Gary J. Maier, who concluded that Meeks was not competent.

¶ 6. After Meeks was committed for treatment, the circuit court again received information in the form of reports and testimony from psychiatrists and psychologists who had examined Meeks in order to deter-

mine his mental competency. The circuit court also heard lay testimony from Meeks' former probation and parole agents and Meeks' former attorney from the state public defender's office.

¶ 7. At issue is the testimony of Mary Scholle (Scholle), Meeks' former attorney, offered by the State at an October 26, 1999, competency hearing. Scholle had previously represented Meeks in 1994 and in 1996–1997, but was not Meeks' attorney in this case. The State subpoenaed Scholle and her attorney asked for a hearing on the subpoena, claiming that there was an "arguable" attorney-client privilege attached to her testimony (R. 20); (R. 70:73). Meeks' attorney objected to Scholle's testimony on "relevance grounds." (R. 71:4). He also asked that the court "take judicial notice that every lawyer is supposed to raise competence when it becomes apparent." *Id.* The circuit court noted the relevancy objection for the record, but allowed the State to call Scholle to testify. Meeks' attorney also objected, on the basis of the attorney-client privilege, to a question asked of Scholle, but the objection was overruled.

¶ 8. At the hearing Scholle testified regarding her standard practice in representing clients. She testified that she had extensive background in representing criminal defendants and that she had represented approximately 3,000 defendants. She testified that she represented a variety of individuals, including individuals with mental health issues. Moreover, Scholle testified that she had been educated about competency issues, and about what to look for to recognize incompetency in her clients, and that she understood the special concerns in determining competency in such situations. Scholle testified that: "[I]n general, if I have any question as to a person's competency, their ability to understand, to make decisions, to know the various

roles of the players in court, I would bring that to the attention of the court." (R. 71:12). In addition, Scholle testified that she had represented Meeks "on two separate occasions" involving three cases, between 1994 and 1997. *State v. Meeks,* 2002 WI App. 65, ¶ 29, 251 Wis. 2d 361, 643 N.W.2d 526. (R. 71:12). According to the records in regard to those cases, Meeks pled guilty in the 1994 case and entered an *Alford*[2] plea in another case.[3] Scholle testified that the concept of an *Alford* plea is a "sophisticated legal concept[s] . . . ." (R. 71:19). The court asked Scholle to describe her practice in going over the guilty plea questionnaire with her clients and how she determined whether the client understood the plea. Scholle responded that she would ask her clients if they understood and if they had any questions. The record was clear that during Scholle's previous representation of Meeks, she had not raised the issue of Meeks' competency in any of those proceedings.[4]

¶ 9. Meeks concedes that: "Ms. Scholle did not relate in her testimony any specific words said to her by Mr. Meeks." (Pet'r Br. at 9). However, he claims that clearly implicit in her testimony was her belief that Meeks was not incompetent when she represented him.

---

[2] *North Carolina v. Alford,* 400 U.S. 25 (1970).

[3] It is unclear from the record or the briefs what occurred in the third case.

[4] Despite the claims of the dissent (¶ 68), it seems quite clear that Scholle, through her testimony, did offer her opinions, perceptions, and impressions concerning Meeks' competency.

## A. Circuit Court Decision

¶ 10. On January 4, 2000, upon reviewing the evidence,[5] the Honorable Elsa C. Lamelas determined that Meeks was competent to proceed. In reaching that decision, Judge Lamelas relied upon Meeks' competency in past legal proceedings, the testimony of parole agents who supervised Meeks, the testimony of Meeks' attorney in the previous prosecutions, Meeks' rudimentary understanding of the legal system, Meeks' demeanor, and the court's observations of Meeks. In regard to the testimony of Attorney Scholle, the court said:

> [S]he testified that if there was any scintilla of doubt in her mind about a person's competency she would have brought that to my attention [in the prior cases]. . . . I have really no doubt in my mind that if the defendant's cognitive limitations were such . . . [given her] experience and commitment, that if it had come to her notice, it would have been brought to my attention; and she did not.[6]

(Def. Br. App., p. 6–7). The court then concluded that Meeks was competent to proceed.

¶ 11. The Honorable Daniel L. Konkol was assigned the case after the preliminary hearing, and he denied subsequent requests for another competency

---

[5] The evidence included approximately 13 months of psychiatric examinations, reports, and competency hearings.

[6] Scholle's testimony, and similar testimony from probation/parole agents who had dealt with Meeks in the years immediately prior to this crime, apparently was presented to counter testimony from defense psychiatrists and psychologists who had concluded from their examinations of Meeks that he was incompetent. The State's witnesses bolstered the argument that in the recent past, Meeks appeared to be able to function adequately.

exam. Meeks entered pleas of not guilty and not guilty by reason of mental disease or defect. On April 6, 2000, at a scheduled plea hearing, defense counsel stated his belief that Meeks could not make a knowingly, voluntary, and intelligent plea. On July 6, 2000, Meeks entered a guilty plea. Meeks was subsequently sentenced to 40 years in prison.

## B. Court of Appeals' Decision

¶ 12. Meeks appealed raising several issues, the main issue being whether Scholle's testimony regarding Meeks' competency was a confidential communication which was obtained during the course of representation, and was therefore inadmissible under Wis. Stat. § 905.03.

¶ 13. The court of appeals upheld Meeks' conviction, concluding that Meeks was competent to proceed. The court of appeals also held that the testimony of Scholle, who had represented Meeks in a prior criminal case, was admissible and relevant at the competency hearing, and that the testimony did not violate the attorney-client privilege. The court of appeals held that, because Scholle did not divulge the contents of any specific conversations with Meeks, she did not disclose any confidential communications under Wis. Stat. § 905.03(1)(d), and hence, did not violate the attorney-client privilege. As a result, the court of appeals found that Scholle's testimony was properly admitted.

¶ 14. In support of its decision, the majority relied on "substantial case law" distinguishing impermissible testimony relating to a client's statements from permissible testimony providing an opinion about the client's

competency.[7] *Meeks,* 251 Wis. 2d 361, ¶¶ 35–42. In reaching its decision, the majority stated:

> [Attorneys] remain officers of the court, obligated to assist the judicial effort to determine whether a defendant is competent to proceed. . . . Therefore, in a very important sense, counsel *cooperate* in a court's effort to make one of the justice system's most fundamental findings—whether a defendant understands the proceedings and can assist in the defense. And in a closely related way, counsel *cooperate* in the court's continuing effort to determine whether a defendant needs mental health assistance, and possibly medication, in order to function in a legal setting.

> Thus, despite the intensity and competing interests of the adversarial setting, counsel must set aside strategic considerations and candidly assist the court's effort to determine whether a defendant is competent to proceed.

> . . . .

> And just as defense counsel must be candid in expressing an opinion about a client's competency, courts, in turn, should understand that counsel's opinion derives, in substantial part, from confidential conversations with the client. Therefore, careful courts, under most circumstances, will give due weight to counsel's opinion without testing it with questions

---

[7] The court of appeals cited eight cases, including six federal court of appeals' cases. The majority also relied upon 3 Weinstein & Berger, Weinstein's Federal Evidence § 503.14 (4)(c) (2 Ed. 2001):

Courts generally permit an attorney to testify to the client's competency to stand trial when the testimony does not relate to confidential communications with the client, but instead relates to the attorney's observations of the client during the time of the communication.

804

likely to expose the details of client conversations and other privileged communications.

These principles logically apply not only to a defendant's trial counsel, but to prior counsel as well . . . .

Here, the court did not improperly consider privileged communications. Explicitly, [the attorney] did not relate any of her conversations with Meeks or testify about the substance of any other privileged communications.

*Id.*, 251 Wis. 2d 361, ¶¶ 36–41 (citations omitted).

¶ 15. Moreover, the court of appeals' majority concluded that the duty of an attorney, as an officer of the court, in determining competency supersedes the duty to the client in protecting the attorney-client privilege.

¶ 16. The Honorable Ralph Adam Fine concurred, stating that he disagreed with the majority opinion's extended discussion of the attorney-client privilege in paragraphs 28–42. Rather, Judge Fine contended that there was no showing that Scholle's testimony revealed, or tended to reveal, confidential communications between her and Meeks; therefore, the attorney-client privilege was not involved. *Id.*, Concurrence, ¶ 66.

¶ 17. Meeks petitioned this court for review on the issue of whether an attorney's opinions, perceptions, and impressions of a former client's mental competency were confidential communications within the meaning of Wis. Stat. § 905.03(2), and, therefore, cannot be revealed without the consent of the client. Meeks' petition for review was granted on April 22, 2002.

## II. ISSUE

¶ 18. This case presents an issue of first impression: whether an attorney's opinions, perceptions, and impressions of a former client's mental competency are confidential communications within the meaning of Wis. Stat. § 905.03(2) and SCR 20:1.6.

## III. STANDARD OF REVIEW

¶ 19. To determine whether Wisconsin law allows for an attorney's opinions, perceptions, and impressions of a former client's mental competency to be admitted during a competency hearing, we need to construe the statutory language of Wis. Stat. § 905.03, which sets forth the attorney-client privilege. This presents a question of statutory construction, which we review de novo. If the circuit court made an error of law in allowing and considering the testimony of Scholle, then it erroneously exercised its discretion. *State v. Hydrite Chem. Co.,* 220 Wis. 2d 51, 59, 582 N.W.2d 411 (Ct. App. 1998) *review denied,* 220 Wis. 2d 364, 585 N.W.2d 156 (1998).

¶ 20. The party asserting the attorney-client privilege bears the burden to establish that the privilege applies. *See Franzen v. Children's Hosp. of Wis.,* 169 Wis. 2d 366, 386, 485 N.W.2d 603 (Ct. App. 1992). The privilege must be strictly and narrowly interpreted, and a "mere showing that the communication was from a client to his attorney is insufficient to warrant a finding that the communication is privileged." *Jax v. Jax,* 73 Wis. 2d 572, 581, 243 N.W.2d 831 (1976) (holding that "[b]ecause the attorney-client privilege is 'an obstacle to the investigation of the truth'

it should be 'strictly confined within the narrowest possible limits consistent with the logic of the principle.' "). *Id.* at 579. Moreover, "[w]hen determining whether a privilege exists, the trial court must inquire into the existence of the relationship upon which the privilege is based *and* the nature of the information sought." *Franzen,* 169 Wis. 2d at 386 (emphasis in original).

## IV. ARGUMENTS

¶ 21. Meeks asks this court to find that Scholle's testimony was covered by the attorney-client privilege; and, as a result, asks this court to reverse the decision of the court of appeals.

¶ 22. First, Meeks argues that this court has set forth exceptions involving guidance as to when an attorney can ethically reveal confidential information without the consent of the client. He argues that under Supreme Court Rule (SCR) 20:1.6, this situation does not fall within any of the exceptions. He states that SCR 20:1.6 does not contain an exception that permits an attorney to offer his or her opinions or perceptions regarding a former client's mental competency. Meeks claims, therefore, that the court of appeals erred in creating a new exception to the attorney-client privilege.

¶ 23. Second, Meeks argues that other jurisdictions are split over the issue of what confidential communications are under the attorney-client privilege. Meeks maintains that there is no definitive guidance for Wisconsin courts on the issue of whether a former counsel's opinions, perceptions, or impressions relating to the mental competency of a prior client are protected by the attorney-client privilege. In support of

his position that Scholle's testimony violated the attorney-client privilege, Meeks asks this court to follow the cases from other jurisdictions which have held that an attorney may not testify as to his or her opinion of a former client's competency to proceed, because it would violate the attorney-client privilege.

¶ 24. Next, Meeks argues that even if the court of appeals is correct that Scholle's testimony was admissible, the rationale is wrong. Meeks maintains that the appellate court erred in emphasizing the role of an attorney as an "officer of the court" in revealing information about a former or current client's competency. Meeks contends that the majority's analysis, which emphasized that Scholle's responsibilities as an "officer of the court" superseded her duty to a former client, seriously eroded the basic privilege and ethical duties of attorneys to protect their confidential communications with clients. Meeks argues that the majority's rationale was overly broad and potentially could provide a limitless exception to the attorney-client privilege.

¶ 25. The State disagrees and asks this court to uphold the court of appeals' decision. The State argues that the attorney-client privilege does not cover Scholle's testimony because her testimony did not involve a confidential communication within the meaning of Wis. Stat. § 905.03(2). In support of its argument the State relies on case law from other jurisdictions. Those cases hold that an attorney may testify at a competency hearing without violating the attorney-client privilege, as long as the substance of the client's communication is not revealed. *See, e.g., United States v. Kendrick,* 331 F.2d 110 (4th Cir. 1964). Because Scholle's testimony did not involve the substance of her communications with Meeks, the State maintains that there was no violation of the attorney-client privilege.

808

¶ 26. The State also argues that Scholle was a competent attorney with many years of experience in representing criminal defendants. Scholle had testified that if she had any doubt of a client's competency, she would have raised it. Her testimony did not reveal any confidential communications she had with Meeks. Therefore, the State claims that the attorney-client privilege does not apply to her testimony.[8]

## V. ANALYSIS

¶ 27. Meeks argues that it "is impossible for an attorney to testify regarding her opinion of the client's fitness to stand trial without violating the attorney-client privilege." (Pet'r Br. at 10–11).

¶ 28. As noted previously, we review the interpretation of Wis. Stat. § 905.03 which sets forth the attorney-client privilege, de novo. It is well settled that the attorney-client privilege belongs to the client. Wis. Stat. § 905.03(2). The client is therefore the privilege's "holder," as that term is used in Wis. Stat. § 905.11. Only the client or someone authorized by the client to do so may waive the privilege. *State ex rel. Dudek v. Circuit Court for Milwaukee County*, 34 Wis. 2d 559, 605, 150 N.W.2d 387 (1967) (an attorney "may not waive any objections to discovery which are based upon the attorney-client privilege. Only the client can waive these objections."); *See also Swan Sales Corp. v. Jos. Schlitz Brewing Co.*, 126 Wis. 2d 16, 31–32, 374 N.W.2d 640 (Ct. App. 1985). As the court in *Schlitz* said:

---

[8] The State also argues that Meeks waived the attorney-client privilege by failing to assert the privilege at the time prior counsel testified.

> In addition, the mere fact that an attorney offers him- or herself as a witness does not automatically waive the attorney-client privilege or work product doctrine as to documents reviewed by the attorney in preparing to testify. We note that these privileges are owned by the attorney's client and can only be waived voluntarily at the client's direction.

*Schlitz,* 126 Wis. 2d at 31–32. There is nothing in the record to indicate that Meeks, himself, consented to Scholle's testimony, or in any way waived the attorney-client privilege.

¶ 29. The attorney-client privilege applies only to confidential communications between an attorney and the client. The attorney-client privilege is recognized in both Wis. Stat. § 905.03(2) and SCR 20:1.6(a). Section 905.03(2) states that "[a] client has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made for the purpose of facilitating the rendition of professional legal services to the client. . . ."

¶ 30. With regard to defining a confidential communication that is protected by the attorney-client privilege, Wis. Stat. § 905.03(1)(d) states: "A communication is 'confidential' if not intended to be disclosed to 3rd persons other than those to whom disclosure is in furtherance of the rendition of professional legal services to the client or those reasonably necessary for the transmission of the communication."

¶ 31. Next, Wis. Stat. § 905.03(3) sets forth who may claim the attorney-client privilege:

> (3) Who may claim the privilege: The privilege may be claimed by the client, the client's guardian or conservator, the personal representative of a deceased client,

or the successor, trustee, or similar representative of a corporation, association, or other organization, whether or not in existence. The person who was the lawyer at the time of the communication may claim the privilege but only on behalf of the client. The lawyer's authority to do so is presumed in the absence of evidence to the contrary.

¶ 32. In addition to the statutory language defining the attorney-client relationship and privilege, this court has adopted specific rules that outline the situations in which an attorney can ethically reveal confidential information without the consent of the client. Supreme Court Rule 20:1.6(b) and (c) state:

(b) A lawyer shall reveal such information to the extent the lawyer reasonably believes necessary to prevent the client from committing a criminal or fraudulent act that the lawyer reasonably believes is likely to result in death or substantial bodily harm or in substantial injury to the financial interest or property of another.

(c) A lawyer may reveal such information to the extent the lawyer reasonably believes necessary:

(1) to rectify the consequences of a client's criminal or fraudulent act in the furtherance of which the lawyer's services had been used;

(2) to establish a claim or defense on behalf of the lawyer in a controversy between the lawyer and the client, to establish a defense to a criminal charge or civil claim against the lawyer based upon conduct in which the client was involved, or to respond to allegations in any proceeding concerning the lawyer's representation of the client.

There are no added exceptions to this rule permitting former counsel to offer his or her opinions, perceptions, and impressions of a former client's competency to proceed.[9]

¶ 33. The comment to the Supreme Court Rule on confidentiality of information fleshes out the rationale behind the attorney-client privilege. In relevant part, the comment states:

> The observance of the ethical obligation of a lawyer to hold inviolate confidential information of the client not only facilitates the full development of facts essential to proper representation of the client but also encourages people to seek early legal assistance.
>
> . . . .
>
> The common law recognizes that the client's confidences must be protected from disclosure. . . .
>
> A fundamental principle in the client-lawyer relationship is that the lawyer maintain confidentiality of information relating to the representation. The client is thereby encouraged to communicate fully and frankly with the lawyer even as to embarrassing or legally damaging subject matter.

¶ 34. Thus, under the comment to SCR 20:1.6, the attorney-client privilege applies in situations other than those "where evidence is sought from the lawyer through compulsion of law." The confidentiality rule applies not merely to matters communicated in confidence by the client, but also to all information relating to the representation, whatever its source. A lawyer

---

[9] *See also In Re Disciplinary Proceedings Against James Paul O'Neil,* 2003 WI 48, 261 Wis. 2d 404, 661 N.W.2d 813.

may not disclose such information unless the client consents after consultation, except as stated in the Rule.[10]

## A. Observations and Perceptions and the Attorney-Client Privilege

¶ 35. As noted above, courts in other jurisdictions are split on the question of whether an attorney's opinions, perceptions, and impressions of his or her client are covered by the attorney-client privilege. The majority of these courts have held that the attorney-client privilege only protects confidential communications between an attorney and his or her client. An attorney's opinions, perceptions, and impressions of a former client's mental competency are, therefore, not protected by the privilege if they do not reveal the substance of their communications. *See Darrow v. Gunn,* 594 F.2d 767 (9th Cir. 1979); *United States v. David,* 511 F.2d 355, 360 (D.C. Cir. 1975); *Clanton v. United States,* 488 F.2d 1069 (5th Cir. 1974); *United States v. Tom,* 340 F.2d 127 (2nd Cir. 1965); *Kendrick,* 331 F.2d 110; *Howell v. United States,* 282 F. Supp. 246 (N.D. Ill. 1968); *People v. Kinder,* 512 N.Y.S.2d 597 (N.Y. App. Div. 1987); *Jones v. District Court,* 617 P.2d 803 (Colo. 1980).

¶ 36. However, a number of other courts have held that disclosure of even non-verbal communications, such as the ones at issue here, violates the attorney-client privilege. *Gunther v. United States,* 230

---

[10] SCR 20:1.6(a). "Confidentiality of Information: (a) A lawyer shall not reveal information relating to representation of a client unless the client consents after consultation, except for disclosures that are impliedly authorized in order to carry out the representation, and except as stated in paragraphs (b), (c) and (d)."

F.2d 222 (D.C. Cir. 1956) (any expression as to the client's mental competency necessarily embraces more than facts observable by anyone); *Kendrick,* 331 F.2d 110 (Sobeloff, C.J., (concurring) (it necessarily follows that the attorney's opinions are based upon discussions with the client); *Bishop v. Superior Court,* 724 P.2d 23 (Ariz. 1986); *State v. Adams,* 283 S.E.2d 582 (S.C. 1981) (any "professional impressions" drawn by the attorney should be privileged).

¶ 37. These cases hold that it is difficult, or nearly impossible, for an attorney to testify regarding an opinion of the client's competency to proceed without violating the attorney-client privilege. For example, in *Gunther* the court held prior counsel cannot be called by the government to testify and give an opinion regarding his former client's mental competency, because this would necessarily be premised upon, and could potentially reveal, factual data protected under the attorney-client privilege. In particular, the court said:

> If trial counsel in a criminal case could be called by the Government and asked to give an opinion as to the accused's competency and ability to assist in the defense, he could necessarily also be asked for the factual data upon which he premised his opinion. These questions would open to inquiry by the Government the entire relationship between the accused and his counsel. Such revelations would be a violation of the attorney-client privilege and would also invade an accused's right to counsel in the trial of the criminal charge.

*Gunther,* 230 F.2d at 223–24.

¶ 38. In addition to opening the door to questions involving the relationship between the accused and counsel, other courts have held that a lawyer's observa-

814

tions are inextricably intertwined with communications between the attorney and the client, and the lawyer's opinion as to the client's competency is based upon conclusions drawn in the course of a unique attorney-client relationship. *Kendrick,* 331 F.2d 110. The *Kendrick* Court said: "Any expression as to the client's mental competency necessarily embrace[s] more than facts observable by anyone it comprehend[s] conclusions drawn in the course of an association that is uniquely regarded in the law." *Id.* at 115. *See also Bishop,* 724 P.2d at 29 (stating that "it defies reality to pretend that the lawyer has formed opinions on competency without relying upon discussions with the defendant").

¶ 39. Moreover, in *State v. Adams,* the court held that "the entire setting of the confidential conference must be protected as well. To lend privilege to the words spoken but to allow disclosure of professional impressions drawn from the manner of their delivery all but destroys the substance of the privilege." *Adams,* 283 S.E.2d at 586.

■■

¶ 40. We agree with the jurisdictions that hold that an attorneys opinions, perceptions, and impressions of a client's competency to proceed are protected by the attorney-client privilege. An attorney's opinion of a client's mental competency is based largely upon private communications with the client. In a law review article, *The Role of the Criminal Defense Lawyer in Representing the Mentally Impaired Defendant: Zealous Advocate or Officer of the Court?,* the author Rodney Uphoff states:

> . . . it is clear that a criminal defense lawyer . . . often forms his opinion of a client's competency largely as a result of private communications with the client. The

protection of the attorney-client privilege is not limited only to the client's words but may include the client's nonverbal communications. A number of courts have held that a lawyer can be compelled to testify regarding counsel's opinion of a client's competency even though the lawyer's observations would involve privileged client communications, but the better reasoned position is that a lawyer's opinion about a client's competence or state of mind is inextricably mixed with the client's private communications.

1988 Wis. L. Rev. 65, 91. (citations omitted).

¶ 41. The testimony of Meeks' former attorney, Scholle, regarding Meeks' mental competency did not involve facts observable by just anyone—otherwise her testimony would not have been required by a subpoena from the State. Furthermore, Scholle's testimony necessarily involved the entire confidential conference setting, as well as the revelation of information conveyed to her through her private, confidential conversations with Meeks.

B. *State v. Johnson*—No Reasonable Inference

¶ 42. The State argues that the minority view of the attorney-client privilege is in direct conflict with this courts decision in *State v. Johnson,* 133 Wis. 2d 207, 395 N.W.2d 176 (1986). (Resp't Br. at 23). We disagree.

¶ 43. Much like the argument of the State, the court of appeals, in its decision, highlights an attorney's duty as an officer of the court as trumping the attorney-client privilege in this case. We hold that the former attorney's duty as an officer of the court does not, under the circumstances set forth herein, trump the attorney-client privilege.

¶ 44. Pursuant to statute and our decision in *Johnson,* we have held that it is an attorney's duty to

the court to raise the issue of competency, if he or she believes there is a reason to doubt that the client is not competent.

¶ 45. The *Johnson* decision marked the first time this court recognized that defense counsel has an affirmative duty to raise the competency issue. The State is correct to the extent that it identifies a tension between our holding today and the decision in *Johnson*. An attorney who informs the court that he or she has reason to doubt the competency of a client, as required by *Johnson*, will be stating an opinion that is based largely on the same private communications that we hold, today, to be protected by the attorney-client privilege.

¶ 46. This tension, however, does not amount to a direct conflict requiring that we overrule *Johnson*. An attorney's duty under *Johnson* demands a very narrow and limited breach of the attorney-client privilege. The attorney is merely obligated to "raise the issue [of competency] with the trial court." *Johnson*, 133 Wis. 2d at 220. There is no requirement that the attorney testify about his or her reasons for raising the issue or the opinions, perceptions, or impressions that form the basis for his or her reason to doubt the clients competence.

¶ 47. More importantly, this narrow and limited breach of the attorney-client privilege is compelled by very strong public policy and constitutional considerations. An incompetent person cannot be tried for an alleged crime consistently with his constitutional right to a fair trial. *State ex rel. Matalik v. Schubert*, 57 Wis. 2d 315, 321, 204 N.W.2d 13 (1973) (citing *Pate v. Robinson*, 383 U.S. 375, 385 (1966)). A defendant who is

817

incompetent can neither understand the proceedings nor help in his or her own defense "only where a defendant is mentally competent will he [or she] be able to exercise effectively the rights which this society extends to persons charged with committing a crime." *Id.* (citation omitted).

¶ 48. In order to protect these important interests, courts are required to determine the competency of a defendant whenever there is reason to doubt the defendant's competence. *See* Wis. Stat. § 971.14. In *Johnson,* we concluded that an attorney's obligation, as an officer of the court, required that he or she raise the issue of competency whenever there was reason to doubt as well. *Johnson,* 133 Wis. 2d at 220.

¶ 49. The compelling interests that drove our decision in *Johnson* are simply not present in a case, like this one, in which a defendant's former counsel is called to testify about her former client's competence. A defendant's former counsel is not caught between the duty to maintain the attorney-client privilege, and the *Johnson* duty, because only the duty to guard confidential communications survives the attorney-client relationship. Present counsel, not former counsel, alone is saddled with both obligations, and it is thus present counsel's duty, as an officer of the court, to assist the court in ensuring that his or her client is competent to be tried. In addition, although Scholle did not relate any of Meeks' specific words or conduct, the clear implication of her extensive testimony was that she thought Meeks was competent when she represented him. Her testimony, therefore, extended well beyond the narrow, limited breach of the attorney-client privilege permitted in *Johnson.*

¶ 50. Finally, we note that it is not reasonable, in light of the rule in *Johnson,* for a court to infer a defendant's competence from the fact that his or her attorney did not raise the issue of competence, in a prior proceeding. Given the nature of mental illness, a defendant may have been competent during a prior proceeding but incompetent now, and vice versa. Similarly, although there is an affirmative duty under *Johnson* to raise the issue of competence, it is impossible for a court to know why an attorney did not raise the issue of competency. Maybe the attorney's contacts with the defendant were so minimal as not to give reason to doubt maybe the attorney had access to psychological records or other information that contradicted his or her doubts about competency or maybe the attorney failed to meet his or her duty as an officer of the court.

## C. Policy Considerations

¶ 51. As noted previously, the attorney-client privilege was recognized in the common law. The ethical obligation of the lawyer to "hold inviolate confidential information" facilitates the full development of the facts essential to proper representation of the client, and encourages people to seek early legal assistance. *See* SCR 20:1.6 comment.

¶ 52. Because of the importance of facilitating open and frank communications between attorney and client, the government should first exhaust all investigatory powers which do not potentially violate the attorney-client privilege, before attempting to compel a person such as a criminal defense attorney to testify.

*Corry v. Meggs,* 498 So. 2d 508, 513 (Fla. Ct. App. 1986) (quoting *In re Witness-Attorney Before Grand Jury No. 83–1,* 613 F. Supp. 394, 398 (S.D. Fla. 1984)). Exhausting all such investigatory powers would not only prevent placing attorneys in an "ethical dilemma," such as was done here, but would also prevent the attorney from incurring claims of a Sixth Amendment violation, such as ineffective assistance of counsel, or claims of denial of the defendant's right to a fair trial. *See Uphoff,* supra at 85 n.91 (citing *Strickland v. Washington,* 466 U.S. 668, *reh'g denied,* 467 U.S. 1267 (1984)).

¶ 53. Here, Scholle should have continued to protect the attorney-client privilege in her testimony by declining to give her opinions, perceptions, or impressions as to Meeks' competency to proceed.[11] There is no applicable exception to attorney-client privilege for

---

[11] As noted previously, when subpoenaed by the State, Scholle moved for a hearing on the subpoena, claiming that there was an arguable attorney-client privilege attached to her testimony (R: 20); (R. 70:73). Given the objections raised by Scholle's attorney and the attorney for Meeks (see ¶ 7 herein), we take issue with the assertion of the dissent (¶¶ 62, 93–94) that there was no timely objection, and, therefore, that waiver occurred in regard to Scholle's testimony.

The dissent's claim that Wis. Stat. §§ 805.18(1), 901.03(1) and 901.03(4) are somehow applicable here is likewise perplexing. Apparently, the dissent is claiming that Meeks' substantial rights were not affected by the testimony required in error, over objection, from Scholle's attorney and Meeks' counsel. Dissent, ¶¶ 96–97. In *State v. Johnson,* 133 Wis. 2d 207, 223–24, 395 N.W.2d 176 (1986), this court made it quite clear that what was at issue was a defendant's "constitutional right to a fair trial."

In *Drope v. Missouri,* 420 U.S. 162, 171–72, Chief Justice Warren Burger, writing for a unanimous U.S. Supreme Court, stated:

820

such lawyer testimony under Wis. Stat. § 905.03, or under SCR 20:1.6, or in the comment thereto.

¶ 54. Although the testimony of Scholle did not explicitly divulge the actual contents of conversations with Meeks, her opinions, perceptions, and impressions of her former clients mental state were necessarily premised upon her privileged and confidential relationship with Meeks. A thorough examination of those opinions, perceptions, and impressions arising from such a privileged and confidential relationship would necessarily reveal factual data upon which the opinions, perceptions, and impressions were based, thus clearly violating the attorney-client privilege.

¶ 55. The matters testified to by Scholle concerning the competency of Meeks to proceed are covered by the attorney-client privilege. The circuit court judge in Meeks' competency hearing decision dated January 4,

> It has long been accepted that a person whose mental condition is such that he lacks the capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense may not be subjected to a trial. . . . For our purposes, it suffices to note that the prohibition is fundamental to an adversary system of justice.

*See also Pate v. Robinson,* 383 U.S. 375, 385 (1966), wherein the United States Supreme Court made it clear that what was at issue was the defendant's "constitutional right to a fair trial."

Here we are clearly dealing with error that involved a substantial right of Meeks, the constitutional right to a fair trial. As such, the error is not excused by an attempt to invoke §§ 805.18(1), 901.03(1) and 901.03(4). The error here was plain, it was objected to, and it was not harmless. It seems quite clear based on Scholle's testimony at the Meeks competency hearing (¶ 8 herein), that Circuit Judge Elsa C. Lamelas relied heavily on that testimony in making her decision that Meeks was competent (see ¶¶ 10, 55–56 herein).

2000, stated: "If the defendant's cognitive limitations were such that someone with Ms. Scholle's experience and commitment, that if it had come to her notice, it would have been brought to my attention; and she did not." (Def. App. B, p.7).

¶ 56. Moreover, the judge stated that Scholle remembered Meeks and "that when she had spoken to him on the previous night, the night before the hearing, in jail, he had indicated to her that he was on medication, and so that she was aware of the fact that there were some mental health issues at that point." *Id.*

¶ 57. Certainly, the State did not exhaust all other investigatory powers in preparing its case for the competency hearing before compelling Scholle to testify. By including the testimony of four expert witnesses and two other lay witnesses, the State already had an arsenal of testimony, which did not violate the attorney-client privilege, to prove Meeks' competency. Indeed, the State could have provided testimony of other potential lay witnesses, including police officers, social workers, and former employers, to prove Meeks' competency, before relying upon Scholle's testimony and, thus, impinging upon the attorney-client privilege.

¶ 58. In summary, we hold that the testimony of Scholle violated the attorney-client privilege. While the contents of confidential conversations with Meeks were not revealed in her testimony, Scholle's expressed opinions, perceptions, and impressions of Meeks' competency were premised upon and inextricably linked to confidential communications. Confidential communications must be interpreted to include both verbal and non-verbal communications in order to preserve inviolate the integrity of the attorney-client relationship.

¶ 59. Policy considerations play a fundamental role in protecting the very important relationship between attorney and client. The attorney-client privilege provides sanctuary to protect a relationship based upon trust and confidence. As such, the State should have exhausted all other means of information prior to attempting to present an attorney's testimony about her client without the clients consent.

## VI. CONCLUSION

¶ 60. We hold that the court of appeals erred in finding the testimony of prior counsels opinions, perceptions, and impressions of her former clients competency did not violate the attorney-client privilege. We hold that Scholle's opinions, perceptions, and impressions of Meeks' competency to proceed are within the attorney-client privilege set forth in Wis. Stat. § 905.03 and SCR 20:1.6.

¶ 61. As a result, such information should not have been revealed without the consent of the former client. We reverse the decision of the court of appeals and remand the case to the circuit court to conduct a competency hearing nunc pro tunc. The court is to determine the competency of Meeks to proceed as of January 4, 2000, without consideration of Scholle's testimony.

*By the Court.*—The decision of the court of appeals is reversed and cause remanded to the circuit court for further proceedings consistent with this opinion.

¶ 62. DIANE S. SYKES, J. *(dissenting)*. I must strenuously dissent. The majority opinion applies a non-existent legal rule to facts that are not present in the case. Furthermore, the alleged evidentiary error

823

upon which the majority reverses was not preserved by a timely objection from the defense, and was therefore waived.

¶ 63. The majority repeatedly states that the issue in this case is whether an attorney's "opinions, perceptions, and impressions relating to a former client's mental competency" are privileged under the attorney-client privilege. Majority op., ¶¶ 1–2, 17–18, 19, 22–23, 32, 40, 46, 53–54, 58, 61. This statement of the issue bears no relationship to the facts in the case. The attorney whose testimony is challenged on this review did not in fact render any "opinions, perceptions, or impressions" about a former client's mental competence.

¶ 64. What happened in the circuit court was this: Assistant State Public Defender Mary Scholle was subpoenaed by the state to testify at a competency hearing involving a former client, Jerry Meeks, who is charged in this case with felony murder. Scholle arrived at the hearing with counsel; Scholle, her counsel, and the prosecutor then discussed with the court the "arguable" attorney-client privilege implications of her testimony.

¶ 65. The issue was resolved when the prosecutor indicated that he did not intend to question Scholle regarding any attorney-client privileged communications, but, rather, would be pursuing a more general line of questioning. Meeks' counsel then objected to Scholle's testimony *on relevance grounds,* and suggested that the court instead take judicial notice of the transcripts and files in the cases on which Scholle had previously represented Meeks, as well as the obligation of every lawyer to raise the issue of his or her client's competence when there is a reason to do so. *See generally State v. Johnson,* 133 Wis. 2d 207, 395 N.W.2d

176 (1986). The circuit court overruled the relevance objection. *Meeks never asserted the attorney-client privilege to prevent Scholle from testifying.*[1]

¶ 66. On direct and cross-examination, Scholle testified very generally about her background, training, and 15–years' experience as a criminal defense lawyer, which included representation of approximately 3,000 defendants, among them persons with mental health problems. She also testified about her general practices in representing clients, including those with mental health problems, and indicated that "in general, if I have any question as to a person's competency, their ability to understand, to make decisions, to know the various roles of the players in court, I would bring that to the attention of the court." She further testified that if she ever had a "scintilla of doubt" as to a client's competence, she would raise it with the court.

¶ 67. As to Meeks in particular, Scholle testified that she represented him on several cases in the mid-1990s, and briefly related certain basic public-record facts about that representation, including the fact that Meeks entered a guilty plea on one case and an *Alford* plea on another. *Scholle was never asked for, and never*

---

[1] During Scholle's testimony, Meeks' counsel objected to *only one* question on attorney-client privilege grounds. The objection was overruled, and Scholle's answer was an innocuous, "I don't recall." More specifically:

> MR. GRIFFEN: Do you recall whether or not, when you represented Mr. Meeks whether or not you were aware of his criminal history?

> MR. NANZ: Objection, Your Honor, I think that goes into perhaps privileged communications.

> THE COURT: Overruled.

> ATTORNEY SCHOLLE: I don't recall specifically.

*offered, any testimony about her "opinions, perceptions, and impressions" about Meeks' mental competence.* She was never asked, and never revealed, any confidential communications of her former client.

¶ 68. How, then, can the majority credibly assert that this case is about the admissibility of an attorney's "opinions, perceptions, and impressions" of a former client's mental competence when the attorney in question *was not asked about and did not testify to any "opinions, perceptions, and impressions" of a former client's competence?* The majority does not cite to any record testimony by Scholle that constitutes an "opinion, perception, or impression" of Meeks' competence, because there is none.

¶ 69. The majority responds to this inescapable reality by tepidly asserting in a footnote that "it seems quite clear that Scholle, through her testimony, did offer her opinions, perceptions, and impressions concerning Meeks' competency." Majority op., ¶ 8, n.4. If it is "quite clear" that Scholle testified as to her "opinions, perceptions, and impressions" of Meeks, one would expect the majority to identify at least one or two of those "opinions, perceptions, and impressions" to support its assertion. The fact that the majority does not do so means, of course, that it cannot do so—again, because there are none.

¶ 70. The majority also ignores the fact that any argument against the admissibility of Scholle's testimony on attorney-client privilege grounds was waived by Meeks' failure to object. The attorney-client privilege, Wis. Stat. § 905.03, is an evidentiary rule. The evidence code plainly provides that "[e]rror may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected" and "a timely objection or motion to strike

826

appears of record, stating the specific ground of objection, if the specific ground was not apparent from the context." Wis. Stat. § 901.03(1)(a). Here, Meeks' attorney objected only to the relevance of Scholle's testimony. Meeks never objected or sought to prevent Scholle from testifying on attorney-client privilege grounds.

¶ 71. The privilege statute itself specifies that the attorney-client privilege "may be claimed by the client" or a representative of the client, including the client's lawyer. Wis. Stat. § 905.03(3) (subsection entitled "Who May Claim The Privilege"). With the one inconsequential exception noted above, *supra,* ¶ 4 n.1, the record is devoid of any indication that Meeks' attorney ever claimed or asserted the attorney-client privilege in order to prevent Scholle from testifying.[2]

¶ 72. Despite this waiver, and disregarding the undeniable fact that the specific issue the majority purports to decide is not actually present in this case, the majority plows ahead and decides the evidentiary privilege question anyway. In so doing, the majority acknowledges but ignores the overwhelming weight of authority finding no attorney-client privilege violation where an attorney's testimony is limited to observations

---

[2] As noted, before testifying, Scholle herself, by counsel, raised with the court any "arguable" attorney-client privilege implications of her testimony, and the matter was resolved when the prosecutor agreed to keep his questions "at a high level of generality," to use the words of Scholle's counsel, Attorney William Tyroler. Also as noted, Meeks' attorney never asserted the attorney-client privilege to prevent Scholle's testimony, did not ask for a continuing objection on attorney-client privilege grounds once Scholle's testimony was underway, and only objected to one specific question on attorney-client privilege grounds.

about a client's competence and does not reveal the substance of confidential communications.[3] Majority op., ¶ 35. Instead, the majority opts to follow "a number of other courts" which (the majority claims) "have held that disclosure of even non-verbal communications, such as the ones at issue here, violates the attorney-client privilege." Majority op., ¶ 36.

¶ 73. First of all, as I have noted, there is *no* evidence in the record that Scholle disclosed *any* communications from Meeks, either verbal *or* non-verbal. The majority does not identify the "non-verbal communications" it believes are cause for concern—again, because there are none. The majority's reference to a disclosure of "non-verbal communications, such as the ones at issue here" is totally mystifying.

¶ 74. In addition, the four cases that the majority has opted to follow in lieu of the overwhelming weight of authority do not in fact support the conclusion that the majority reaches here. Two of the four cases relied upon actually reached the opposite result, concluding that an attorney's observations about a former client's competence do not constitute privileged communications. The third case did not involve the issue of a client's competence at all, but rather, involved the admissibility of an attorney's opinion about the voluntariness of his client's confession, as well as an actual

---

[3] *See, Darrow v. Gunn*, 594 F.2d 767 (9th Cir. 1979); *Clanton v. United States*, 488 F.2d 1069 (5th Cir. 1974); *United States v. David*, 511 F.2d 355 (D.C. Cir. 1975); *Howell v. United States*, 442 F.2d 265 (7th Cir. 1971); *United States v. Tom*, 340 F.2d 127 (2nd Cir. 1965); *United States v. Kendrick*, 331 F.2d 110 (4th Cir. 1964); *Manning v. State*, 766 S.W.2d 551 (Tex. Ct. App. 1989); *People v. Kinder*, 126 A.D.2d 60 (N.Y. App. Div. 1987); *Jones v. District Court*, 617 P.2d 803 (Colo. 1980).

disclosure of a confidential attorney-client conversation. The sole remaining case is likely no longer good law.

¶ 75. More specifically, the majority relies upon *Gunther v. United States,* 230 F.2d 222 (D.C. Cir. 1956), *United States v. Kendrick,* 331 F.2d 110 (4th Cir. 1964)(concurring opinion), *Bishop v. Superior Court,* 724 P.2d 23 (Ariz. 1986) and *State v. Adams,* 283 S.E.2d 582 (S.C. 1981). Majority op., ¶ 36.

¶ 76. *Kendrick* is fully consistent with the established line of authority that an attorney's observations about a client's competence are not privileged communications. *Kendrick,* 331 F.2d at 113–14. The majority acknowledges this, and includes *Kendrick* in the long list of cases that the majority has decided not to follow. Majority op., ¶ 35. The majority cites the concurrence in *Kendrick* as one of the "other courts" and "cases" which "hold" that an attorney's observations about a client's competence are protected by privilege. Majority op., ¶¶ 36–38. The *Kendrick* concurrence represented the minority view of two judges in an en banc federal appellate decision; it cannot be cited as "holding" anything at all. The majority paraphrases and quotes from the *Kendrick* concurrence, with attribution to "[t]he *Kendrick* Court," as if to suggest that *Kendrick* actually supports the majority's position, when in fact it does not. Majority op., ¶ 38.

¶ 77. The majority also relies upon *Bishop,* which, like *Kendrick,* held that an attorney's observations of a client's mental competence *do not* constitute privileged communications:

> While few cases have dealt with this issue, the weight of authority supports the view that an attorney may testify at a competency hearing without violating

the attorney-client privilege so long as the testimony does not include the substance of confidential communications. *United States v. Kendrick,* 331 F.2d 110, 114 (4th Cir. 1964) (objectively observable particularizations of the client's demeanor and attitude not within the privilege if made at a time when neither lawyer nor client manifested any reason to suppose they were confidential); *see also Darrow v. Gunn,* 594 F.2d 767 (9th Cir. 1979), *United States v. David,* 511 F.2d 355, 360 (D.C.Cir. 1975); *Clanton v. United States,* 488 F.2d 1069, 1070 (5th Cir. 1974); *Howell v. United States,* 282 F.Supp. 246 (N.D.Ill. 1968), *aff'd* 442 F.2d 265 (7th Cir. 1971); *United States v. Tom,* 340 F.2d 127 (2nd Cir. 1965); *Jones v. District Court,* 617 P.2d 803, 808 (Colo. 1980).

. . . .

[W]e will allow the testimony for several reasons. Observation of behavior is not a communication and therefore is not protected by the privilege. *See Granger v. Wisner,* 134 Ariz. 377, 379–80, 656 P.2d 1238, 1240–41 (1982); McCORMICK, EVIDENCE § 89 at 213 (3d ed. 1984) . . . .

We therefore conclude that, in a competency hearing, the judge may call upon both counsel as officers of the court to provide whatever conclusions and opinions they may have, together with so much of the supporting facts as may be obtained without violating either the attorney-client privilege or the confidentiality provided to attorney's work product.

*Bishop,* 724 P.2d at 28–30.

¶ 78. *Adams,* another case relied upon by the majority, involved the admissibility of an attorney's opinion regarding the voluntariness of his client's confession, not his client's competence to stand trial. *Adams,* 283 S.E.2d at 585–86. In addition, the attorney in

830

*Adams* actually "describe[d] one private conversation" he had with the client, a fact not present here. *Id.*

¶ 79. Finally, *Gunther,* also cited by the majority, is no longer good law in light of a decision of the same circuit nearly 20 years later reaching a different conclusion. *Gunther* was a three-paragraph per curiam opinion of the D.C. Circuit in which the court summarily concluded that trial counsel could not be called to testify at a post-trial hearing regarding a client's competence because of the danger that additional questions "could" be asked that would implicate the attorney-client privilege. *Gunther,* 230 F.2d at 223. Two of the three paragraphs in the *Gunther* per curiam recited procedural matters, and the court's summary conclusion about the attorney's testimony was more prophylactic than substantive: the court did not actually hold that an attorney's opinion about his client's competence was privileged, only that an attorney's testimony in this regard could open the door to questions about matters that were. *Id.*

¶ 80. In any event, in *United States v. David,* 511 F.2d 355 (D.C. Cir. 1975), the D.C. Circuit, in an opinion by Judge Bazelon, who had been on the panel in *Gunther,* held that "in making a competency determination it may be very useful for the trial judge to question both the defendant and his counsel." *Id.* at 360. The court further held that "counsel's first-hand evaluation of a defendant's ability to consult on his case and to understand the charges and proceedings against him may be as valuable as an expert psychiatric opinion on his competency." *Id.; see also Medina v. California,* 505 U.S. 437, 450 (1992)(citing *David,* 511 F.2d at 360)("defense counsel will often have the best-informed view of the defendant's ability to participate in his defense"). While the D.C. Circuit continues to apply

*David, see, e.g., United States v. Klat,* 213 F.2d 697, 703 (D.C. Cir. 2000), the last, and only, time that it applied *Gunther* was in *Seidner v. United States,* 260 F.2d 732, 733 (D.C. Cir. 1958). Given its conclusory nature, the *Gunther* per curiam has limited persuasive value in the first place; after *David,* it may no longer be held up as good law. *See Manning,* 766 S.W.2d at 556–57 (concluding that *Gunther* was essentially overruled by *David*).

¶ 81. In short, the majority has adopted an interpretation of the attorney-client privilege that has either extremely flimsy or no support in the extrajurisdictional case law. As demonstrated above, there is in fact no "split" of authority in other jurisdictions, as the majority contends. Majority op., ¶ 35. The legal rule the majority adopts—that an attorney's opinions, perceptions, and impressions about a former client's mental competence are privileged—does not exist anywhere, inside or outside of Wisconsin.

¶ 82. More importantly, however, and setting aside the majority's misplaced reliance on the foregoing cases, the majority has grossly distorted the language and scope of the attorney-client privilege statute in its attempt to bring Scholle's testimony within the privilege.

¶ 83. The attorney-client privilege appears at Wis. Stat. § 905.03, which provides that the privilege protects "confidential communications made for the purpose of facilitating the rendition of professional legal services to the client." Wis. Stat. § 905.03(2). A communication is "confidential" within the meaning of the attorney-client privilege "if not intended to be disclosed to 3rd persons other than those to whom disclosure is in furtherance of the rendition of professional legal ser-

vices to the client or those reasonably necessary for the transmission of the communication." Wis. Stat. § 905.03(1)(d).

¶ 84. It is well-established that "the [attorney-client] privilege protects 'communications,' not necessarily facts or evidence." *State ex rel. Dudek v. Circuit Court*, 34 Wis. 2d 559, 578, 150 N.W.2d 387 (1967). Thus, "it is the communications, not facts relevant to the controversy, which are shielded by the privilege." *Id.* at 580. "Wisconsin, like most jurisdictions, has recognized only a narrow ambit to the communications included within the attorney-client privilege." *Id.* at 579. We have also recognized that the attorney-client privilege, like all evidentiary privileges, is an obstacle to the truth and "should be 'strictly confined to within the narrowest possible limits consistent with the logic of the principle.'" *Jax v. Jax*, 73 Wis. 2d 572, 579, 243 N.W.2d 831 (1976)(citations omitted).

¶ 85. The majority seems to implicitly concede that Scholle's testimony did not directly implicate any confidential communication within the meaning of Wis. Stat. § 905.03, because the majority explicitly rests its conclusion upon an interpretation of "the attorney-client privilege set forth in Wis. Stat. § 905.03 *and* SCR 20:1.6." Majority op., ¶ 61 (emphasis added); *see also,* majority op., ¶¶ 1–2. But SCR Chapter 20 does not "set forth" any evidentiary privileges at all, nor could it, as it is a code of ethics, not evidence. Indeed, the preamble to SCR Chapter 20 explicitly provides that the rules of professional responsibility "are not intended to govern or affect judicial application of either the attorney-client privilege or work product privilege." Wisconsin SCR Ch. 20, Rules of Professional Conduct for Attorneys, Preamble: A Lawyer's Responsibilities.

¶ 86. Thus, by incorporating SCR 20:1.6 into the statutory attorney-client privilege, the majority has done what the preamble to SCR Chapter 20 says must not be done. The majority has determined the scope and application of the statutory attorney-client privilege by reference to the SCR rules, contrary to the expressed intent of those rules.

¶ 87. I am also extremely troubled by the significant overbreadth of the majority opinion. The majority concludes that Scholle's testimony violates the attorney-client privilege without evaluating any of the specific questions asked of Scholle or the answers she gave. This conflicts with the law, recited earlier in the majority opinion, that "[t]he party asserting the privilege bears the burden to establish that the privilege applies," that the privilege is to be "strictly and narrowly interpreted," and that the court must inquire into "the nature of the information sought" before concluding that the privilege applies. Majority op., ¶ 20 (quoting *Franzen v. Children's Hosp. Of Wis.,* 169 Wis. 2d 366, 386, 485 N.W.2d 603 (Ct. App. 1992) and *Jax,* 73 Wis. 2d at 581). The applicability of the attorney-client privilege is typically evaluated on a question-by-question basis precisely to avoid overly broad invocations of the privilege that are inconsistent with its purpose and would thwart the discovery of the truth. How can the majority properly apply these legal principles if it reaches its conclusion without reference to the testimony that was actually sought and given?

¶ 88. The majority also broadly invokes "policy considerations" in support of its conclusion, majority op., ¶¶ 51–59, on the theory that "policy considerations play a fundamental role in protecting the very important relationship between attorney and client." Majority op., ¶ 59. I do not understand how the majority's

ideas about policy can override the specific terms of a statutory privilege. The majority's evaluation of non-statutory "policy considerations" lead to the sweeping conclusion that "[c]onfidential communications must be interpreted to include both verbal and non-verbal communications in order to preserve inviolate the integrity of the attorney-client relationship." Majority op., ¶ 58. This is an extraordinary expansion of the scope of the attorney-client privilege, and there is no authority for it. The ramifications of this unwarranted extension of the privilege are unknown, but potentially far-reaching.

¶ 89. Finally, the majority's attempt to distinguish *Johnson* may have unforeseen implications for the duty of defense counsel to raise the issue of a client's competence when there is reason to do so. *Johnson* involved a claim of ineffective assistance of counsel for failure to raise the defendant's competence as an issue. *Johnson,* 133 Wis. 2d at 210–11. We held that "where defense counsel has a reason to doubt the competency of his client to stand trial, he must raise the issue with the trial court." *Id.* at 220.

¶ 90. The majority dismisses the inference that, consistent with her duty under *Johnson,* Scholle would have raised the issue of Meeks' competence had there been reason to do so. Majority op., ¶ 50. The majority rejects this very reasonable inference by speculating about other possible explanations for an attorney's silence in the face of the *Johnson* duty. *Id.* The inference that an experienced attorney would comply with her *Johnson* duty to raise the issue of competence does not become unreasonable or impermissible merely because there may be other possible explanations for the attorney's inaction. Choosing between competing inferences is the job of the factfinder—here, the circuit court. It is improper for an appellate court to weigh

competing inferences, or, as the majority has done here, to completely rule out an otherwise reasonable inference that the factfinder was entitled to consider.

¶ 91. I must also strongly object to the majority's conclusion that "Scholle should have continued to protect the attorney-client privilege in her testimony by declining to give her opinions, perceptions, or impressions as to Meeks' competency to proceed." Majority op., ¶ 53. Once again, there is no evidence whatsoever that Scholle actually "gave" *any* "opinions, perceptions, or impressions" about Meeks' competence, and even if she had done so, there is no legal support for the proposition that an attorney's "opinions, perceptions, or impressions" about a former client's competence are "confidential communications" protected by the attorney-client privilege.

¶ 92. Implicit in the majority's assertion about what Scholle "should have" done is a conclusion that Scholle committed an ethical and legal wrong against her former client. The majority thus maligns the integrity of an experienced member of the bar by way of an opinion that is wholly unsupported in fact or law.

¶ 93. Finally, reversal is improper here unless the supposed erroneous admission of Scholle's testimony affected Meeks' substantial rights. Wis. Stat. § 901.03(1); *see also* Wis. Stat. §§ 805.18(2) and 972.11(1). Where the alleged error was not preserved by a timely objection, the error is waived and reversal is statutorily prohibited; the only exception is plain error. Wis. Stat. § 901.03(1)(a) and (4). The plain error rule of Wis. Stat. § 901.03(4) provides that even in the absence of a timely objection, a reviewing court may remedy a plain error, but only where the error implicates a violation of constitutional rights so serious that it affects the fundamental fairness and integrity of the

trial court proceedings. *Virgil v. State,* 84 Wis. 2d 166, 192–93, 267 N.W.2d 852 (1978); *State v. Vinson,* 183 Wis. 2d 297, 515 N.W.2d 314 (Ct. App. 1994).

¶ 94. The majority makes no effort to engage in either a harmless error analysis under Wis. Stat. §§ 901.03(1) or 805.18(2) or a plain error analysis under Wis. Stat. § 901.03(4), but simply reverses for a nunc pro tunc competency hearing "without consideration of Scholle's testimony." Majority op., ¶ 61. As such, the majority opinion compounds all its multiple mistakes by also ignoring the requirements of Wis. Stat. §§ 901.03, 805.18(2) and 972.11(1).[4] For the foregoing reasons, I dissent.

¶ 95. I am authorized to state that Justice DAVID T. PROSSER, JR. joins this dissenting opinion.

---

[4] The majority responds by saying that the constitutional right to a fair trial is implicated if an incompetent person is subjected to a trial. Majority op., ¶ 53 n.11. Of course it is, and no one is saying otherwise. The material point, however, is that the majority has utterly failed to engage in any analysis whatsoever of the effect of Scholle's testimony on the determination of Meeks' competence. In order to justify a new competency hearing under either harmless error or plain error analysis, the majority must be able to conclude that Scholle's testimony so influenced the competency determination that but for her testimony, Meeks would have been found incompetent. *See State v. Weed,* 2003 WI 85, ¶¶ 29–30, 263 Wis. 2d 434, 666 N.W.2d 485 (reviewing court evaluates an error's harmlessness by evaluating the nature of the error and the harm it is alleged to have caused).