In the MATTER OF DISCIPLINARY PROCEEDINGS AGAINST
James Paul O'NEIL, Attorney at Law:

OFFICE OF LAWYER REGULATION, Complainant,

v.

James Paul O'NEIL, Respondent.

Supreme Court

*No. 02–1029–D. Decided May 28, 2003.*

2003 WI 48

(Also reported in 661 N.W.2d 813.)

¶ 1. PER CURIAM.   We review the recommenda-
tion of the referee, Konrad T. Tuchscherer, that Attor-

ney James Paul O'Neil receive a public reprimand for professional misconduct consisting of revealing information relating to his representation of a client without the client's consent, and that he be required to pay the costs of the proceeding.

¶ 2. We determine that a public reprimand is appropriate discipline for Attorney O'Neil's misconduct. We also order him to pay the costs of this proceeding.

¶ 3. Attorney O'Neil was admitted to practice law in Wisconsin in 1988 and practices in Green Bay. On November 21, 1995, this court suspended Attorney O'Neil's license to practice law for 12 months as the result of misconduct involving dishonesty, fraud, deceit, and misrepresentation. *In re Disciplinary Proceedings Against O'Neil,* 197 Wis. 2d 224, 539 N.W.2d 881 (1995). Attorney O'Neil's license was reinstated on February 26, 1997.

¶ 4. On May 6, 1999, Attorney O'Neil was retained by Erik Gracia to file a divorce action against his wife, Colleen Gracia. Mr. Gracia paid Attorney O'Neil a $1000 retainer and provided him with copies of various financial records. Attorney O'Neil contacted the Brown County Family Court Commissioner's Office to schedule a date for a temporary hearing and prepared the necessary pleadings to commence a divorce action.

¶ 5. On May 11, 1999, Gracia filed the divorce petition and gave Attorney O'Neil the required filing fee. That same day, before the divorce petition was filed, Colleen Gracia was found dead. Newspaper accounts indicated that investigators initially thought the cause of her death was suicide, but two weeks later an autopsy established the cause of death as homicide by asphyxiation.

¶ 6. On May 12, 1999, Gracia called Attorney O'Neil to notify him of his wife's death and to request a

refund of his retainer. Attorney O'Neil was out of the office that day but learned of Mrs. Gracia's death in a phone call to his office.

¶ 7. On May 14, 1999, Detective Zittel from the Green Bay Police Department contacted Attorney O'Neil's office and spoke to both Attorney O'Neil and his secretary. The police report indicates that Attorney O'Neil told the detective that Erik Gracia said the reason he wanted a divorce was that his wife had a boyfriend. The police report also indicates that Attorney O'Neil told the detective that Gracia said he and his wife were splitting up their property and that Gracia did not want any confrontation in the divorce and wanted the case to go smoothly.

¶ 8. The police report also indicates that Attorney O'Neil told Detective Zittel that when Erik Gracia came into his office his mother was with him. Attorney O'Neil also told the detective that when he spoke to Erik Gracia the day after his wife's death Gracia told Attorney O'Neil to stop the divorce and refund the retainer money. The police report further indicates that the detective asked Attorney O'Neil if he would jot down any conversations he might have in the future with Erik Gracia, and Attorney O'Neil said he would do so. Although Attorney O'Neil denied the accuracy of some statements attributed to him, he admitted meeting with the detective and discussing the matter with him. Attorney O'Neil did not request Gracia's consent to provide information relating to his representation of Gracia to the police.

¶ 9. On May 18, 1999, Gracia telephoned Attorney O'Neil and inquired about representation in defense of potential criminal proceedings. Attorney O'Neil

referred Gracia to an attorney not associated with O'Neil's firm. This was the last contact Attorney O'Neil had with Gracia.

¶ 10. On June 8, 1999, the Brown County Circuit Court issued a subpoena for Attorney O'Neil's file for the Gracia divorce. The subpoena stated that, pursuant to an official felony criminal investigation, Attorney O'Neil was "requested" to furnish copies of "any file notes, records, and all other information concerning your work on behalf of Erik Garcia [sic] in his pending divorce action with Colleen Garcia [sic]." In an affidavit supporting the subpoena the prosecutor stated a belief that Gracia had provided information to Attorney O'Neil that was relevant to the circumstances surrounding Colleen Gracia's death. The subpoena was served on Attorney O'Neil on June 10, 1999. Attorney O'Neil did not request Gracia's consent to turn over the file or provide information to the police. On June 14, 1999, Attorney O'Neil turned over to police investigators the entire Gracia file, including notes, bank account records, and other financial information.

¶ 11. The police report indicates that during a June 14, 1999, interview Attorney O'Neil told a police investigator that when he initially met with Gracia, Gracia said he wanted Attorney O'Neil to set up custody arrangements and visitation with Colleen Gracia for their daughter and that Gracia did not want to talk to Colleen. Attorney O'Neil told the investigator he thought it was strange that Gracia could not at least talk to his wife about these things. Attorney O'Neil also told the investigator that Gracia said Colleen had taken a second job to help pay for daycare for their daughter and this made Gracia mad.

¶ 12. Attorney O'Neil told the police investigator that Gracia said he was not looking for any type of

reconciliation with Colleen and that he just wanted to get divorced and get it over with. Attorney O'Neil told police that during his initial interview with Gracia he probably would have told Gracia he would be obligated to pay 17 percent of his income for child support, along with other expenses. Attorney O'Neil said Gracia neglected to tell him about his past record of domestic abuse. In looking over the financial form that Gracia had filled out Attorney O'Neil noted that Gracia made approximately $1100 a month after taxes and that his expenses were almost double his monthly income. While Attorney O'Neil denied making some of the statements attributed to him in the investigator's report, he admitted meeting with the police investigator on June 14, 1999, and discussing the Gracia divorce case.

¶ 13. Police investigators noted that one of the legal forms in the Gracia file had been signed by Gracia the day of Colleen's murder and had been notarized by Attorney O'Neil's secretary. Attorney O'Neil, without seeking Gracia's consent, gave the police investigators permission to talk with his secretary about the times and dates she had contact with Gracia in the O'Neil law office. The investigators did contact Attorney O'Neil's secretary who supplied them with the information they requested.

¶ 14. On July 28, 1999, criminal charges were filed against Gracia. He was subsequently convicted of first-degree intentional homicide in the death of his wife and is currently serving a life sentence.

¶ 15. The complaint filed by the Office of Lawyer Regulation (OLR) alleged that Attorney O'Neil never considered asserting the attorney-client privilege on behalf of Gracia, that he acknowledged he should have done so, and that he claimed to have provided the

information to law enforcement investigators because he felt that by doing so he was best serving his client's interests. The complaint alleged that Gracia contended the statements made by Attorney O'Neil to law enforcement investigators were used in the decision to issue criminal charges and that financial information that was disclosed from the divorce file was used by the prosecution to help establish a motive for the crime.

¶ 16. The referee filed his report and recommendation on February 19, 2003. The referee's report notes that prior to the Gracia murder trial the Brown County District Attorney agreed not to use any of the information received from Attorney O'Neil when filing the original and amended criminal complaints and, in fact, no documents received from Attorney O'Neil were used at Gracia's trial. The referee's report also notes that neither Attorney O'Neil nor any member of his staff was called as a witness at the trial and none of the information disclosed by Attorney O'Neil was used in the prosecution of Gracia's case. The referee also notes that Gracia did not raise any issues about Attorney O'Neil's representation in his criminal appeal. In its opinion affirming Gracia's judgment of conviction the court of appeals pointed to the overwhelming circumstantial evidence of Gracia's guilt, including his inconsistent statements, DNA evidence, and admissions against interest.

¶ 17. The OLR's complaint alleged that Attorney O'Neil violated SCR 20:1.6.[1] The referee's report notes

---

[1] SCR 20:1.6 provides:   Confidentiality of information.

(a) A lawyer shall not reveal information relating to representation of a client unless the client consents after consultation, except for disclosures that are impliedly authorized in order to carry out the representation, and except as stated in paragraphs (b), (c) and (d).

that, in defense of his admitted violation of the rule, Attorney O'Neil suggested he was trying to help Gracia by divulging information in his client's file which showed that the divorce was amicable and that the Gracias were attempting to split up the marital property without a contest. The referee also notes that Attorney O'Neil claimed he did not know he was violating SCR 20:1.6 when he made the disclosures to police. The referee's report states that Attorney O'Neil said since the filing of the grievance he has become familiar with SCR 20:1.6, has advised his staff with respect to the importance of confidentiality, and attended a seminar on the subject.

(b) A lawyer shall reveal such information to the extent the lawyer reasonably believes necessary to prevent the client from committing a criminal or fraudulent act that the lawyer reasonably believes is likely to result in death or substantial bodily harm or in substantial injury to the financial interest or property of another.

(c) A lawyer may reveal such information to the extent the lawyer reasonably believes necessary:

(1) to rectify the consequences of a client's criminal or fraudulent act in the furtherance of which the lawyer's services had been used;

(2) to establish a claim or defense on behalf of the lawyer in a controversy between the lawyer and the client, to establish a defense to a criminal charge or civil claim against the lawyer based upon conduct in which the client was involved, or to respond to allegations in any proceeding concerning the lawyer's representation of the client.

(d) This rule does not prohibit a lawyer from revealing the name or identity of a client to comply with ss. 19.43 and 19.44, Stats. 1985–86, the code of ethics for public officials and employees.

¶ 18. The referee concluded that by disclosing his client's file and discussing its contents with the Green Bay Police Department, Attorney O'Neil revealed information relating to representation of a client without the client's consent, in violation of SCR 20:1.6. The referee concluded that although Attorney O'Neil was previously suspended from practicing law for 12 months, and although the violations committed in the instant case were unrelated to those resulting in the previous suspension, and there did not appear to be a pattern of misconduct, the time period between Attorney O'Neil being reinstated to practice and the commitment of the violation in this matter was only 27 months.

¶ 19. The referee concluded that although misconduct occurred, it was not of a significantly serious nature given the mitigating circumstances. The referee also concluded there was no need to protect the public from Attorney O'Neil since he has indicated he now understands SCR 20:1.6 and has said he will conduct his practice accordingly. The referee also noted that Attorney O'Neil cooperated fully with the OLR and for the most part made full and free disclosures showing a cooperative attitude toward the proceedings. The referee recommended that Attorney O'Neil be given a public reprimand and that he be required to pay the costs of the proceeding, which totaled $11,438.82 as of March 12, 2003.

¶ 20. We adopt the referee's findings of fact and conclusions of law. Attorney O'Neil's misconduct with respect to his disclosure of information relating to representation of a client without the client's consent is a serious failing. As discipline for the professional misconduct we impose a public reprimand and order

Attorney O'Neil to pay the costs of this proceeding, as recommended by the referee.

¶ 21. IT IS ORDERED that Attorney James Paul O'Neil be publicly reprimanded for his professional misconduct.

¶ 22. IT IS FURTHER ORDERED that within 60 days of the date of this order Attorney James Paul O'Neil shall pay to the Office of Lawyer Regulation the costs of this proceeding in the amount of $11,438.82. If the costs are not paid within the time specified, and absent a showing to this court of his inability to pay the costs within that time, the license of Attorney James Paul O'Neil to practice law in Wisconsin shall be suspended until further order of the court.

¶ 23. WILLIAM A. BABLITCH, DAVID T. PROSSER, and DIANE S. SYKES, JJ., dissent as to the amount of costs and find the costs to be excessive.