# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2011AP2458-D |
| COMPLETE TITLE: | In the Matter of Disciplinary Proceedings Against Peter J. Thompson, Attorney at Law: |
| | Office of Lawyer Regulation, Complainant-Respondent, |
| | v. |
| | Peter J. Thompson, Respondent-Appellant. |

---

DISCIPLINARY PROCEEDINGS AGAINST THOMPSON

---

| | |
|---|---|
| OPINION FILED: | May 20, 2014 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | |

---

| | |
|---|---|
| SOURCE OF APPEAL: | |
| COURT: | |
| COUNTY: | |
| JUDGE: | |

---

| | |
|---|---|
| JUSTICES: | |
| CONCURRED: | |
| DISSENTED: | BRADLEY, J., ABRAHAMSON, C.J., dissent. (Opinion filed.) |
| NOT PARTICIPATING: | |

---

ATTORNEYS:

For the respondent-appellant, there were briefs by *Peter J. Thompson*, pro se.

For the Office of Lawyer Regulation, there was a brief by *Robert G. Krohn* and *Roethe Pope Roethe LLP*, Edgerton.

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No.  2011AP2458-D

STATE OF WISCONSIN               :        IN SUPREME COURT

**In the Matter of Disciplinary Proceedings Against Peter J. Thompson, Attorney at Law:**

**Office of Lawyer Regulation,**

         **Complainant-Respondent,**

     **v.**

**Peter J. Thompson,**

         **Respondent-Appellant.**

**FILED**

**MAY 20, 2014**

Diane M. Fremgen
Clerk of Supreme Court

ATTORNEY disciplinary proceeding.  *Complaint dismissed.*

¶1  PER CURIAM.  Attorney Peter J. Thompson, pro se, appeals Referee James Curtis's report concluding that Attorney Thompson engaged in professional misconduct warranting a public reprimand.  Under the facts presented, we conclude Attorney Thompson did not violate the rules of professional conduct as alleged in the complaint.  However, we remind lawyers to proceed with caution when considering disclosure of confidential client information in response to a claim of ineffective assistance of counsel.

¶2 Attorney Thompson was licensed to practice law in Wisconsin in 1974. When this case commenced, he had practiced law for 34 years and had never been the subject of a disciplinary action. This misconduct proceeding stems from a letter that Attorney Thompson sent to the circuit court judge presiding over a postconviction proceeding in which Attorney Thompson's former client, Derek C., alleged that Attorney Thompson rendered him ineffective assistance of counsel. Accordingly, Derek C.'s underlying criminal proceeding is relevant to the pending allegations of misconduct.

¶3 In October 2006 the State Public Defender's Office (SPD) appointed Attorney Thompson to represent Derek C., who was charged with one felony count of first-degree sexual assault of a child under the age of 13. The criminal complaint alleged that Derek C. had sexually assaulted his five-year-old nephew while babysitting the boy during a specific school snow day in December 2005.

¶4 Attorney Thompson and Derek C. appeared for a court status conference on March 21, 2007, and requested a jury trial. Trial was scheduled to commence July 10, 2007. In early June 2007 Attorney Thompson and Derek C. appeared for a final pretrial conference. At the conference, Derek C. provided Attorney Thompson with a handwritten note describing a potential alibi defense and naming several possible witnesses. Attorney Thompson received the note after the deadline for filing a notice of alibi defense.

¶5　On June 20, 2007, Attorney Thompson moved the court to shorten the time for filing an alibi and filed the alibi defense.　In July 2007 Derek C.'s case went to trial.　As will be discussed, Attorney Thompson opted not to use the alibi defense at trial.　Derek C. was convicted.

¶6　In September 2007, prior to sentencing, Attorney Thompson withdrew as counsel.　On or about September 24, 2007, Attorney Richard Schaumberg was appointed as successor counsel. Attorney Thompson gave Attorney Schaumberg relevant portions of Derek C.'s file.

¶7　On January 30, 2008, Derek C. and Attorney Schaumberg appeared for the sentencing hearing at which Derek C. was sentenced to 10 years of incarceration and seven years of extended supervision.　Attorney Schaumberg filed a timely notice of intent to pursue postconviction relief.

¶8　In March 2008 the SPD appointed Attorney David Leeper to represent Derek C. as appellate/postconviction counsel.　On July 7, 2008, Attorney Leeper filed a motion for a new trial on behalf of Derek C., alleging that Attorney Thompson rendered ineffective assistance of counsel.

¶9　The Machner hearing was scheduled to commence October 14, 2008.[1]　On September 16, 2008, Attorney Leeper filed several motions asking the trial court to make rulings in advance of the Machner hearing.　He asked the court to deem

---

[1] State v. Machner, 92 Wis. 2d 797, 285 N.W.2d 905 (Ct. App. 1979).

3

Attorney Thompson an adverse witness, contending that Attorney Thompson had been unresponsive and uncooperative during postconviction proceedings, and asked the court to remove the district attorney from the case. He asked the circuit court to "summarily" decide the motions before the Machner hearing.

¶10 Attorney Thompson was concerned that the circuit court would rule on Attorney Leeper's motions before the Machner hearing and limit his opportunity to testify. On September 24, 2008, Attorney Thompson wrote to the Honorable Jon Counsell, the judge presiding over Derek C.'s postconviction proceeding. Attorney Thompson requested the court's permission to address "certain motions and assertions that Attorney Leeper has been making" and asked the court to permit Attorney Thompson "a chance to respond to these and other issues by the close of business on Monday, September 29th." The record reflects that Attorney Thompson received a communication from court staff, indicating that Attorney Thompson could respond.

¶11 Attorney Thompson then sent the September 29, 2008 letter that forms the basis of the OLR's complaint.

¶12 The parties dispute whether ensuing events are relevant. We summarize them briefly. The Machner hearing commenced on October 14, 2008. Before Attorney Thompson arrived, Attorney Leeper sought and received a sequestration order. Attorney Thompson was not present at the time and was not specifically subject to the sequestration order. The Machner hearing did not finish that day and Attorney Thompson was not called to testify.

4

¶13  On October 21, 2008, the circuit court issued an order rejecting Attorney Leeper's request that the court limit discussions between the district attorney and Attorney Thompson. Attorney Leeper sought leave to appeal this nonfinal order and the court of appeals accepted review.  The Machner hearing was continued pending appeal.

¶14  In February 2011 the court of appeals ruled that a circuit court has authority to issue a sequestration order prohibiting the prosecutor from discussing witness testimony with defense counsel.  The court directed the circuit court, on remand, to clarify whether it intended its sequestration order to include Attorney Thompson.

¶15  On remand, Judge Counsell ruled that Attorney Thompson was not subject to the sequestration order, noting that trial counsel in a Machner hearing should have the opportunity to prepare for the hearing.

¶16  In April 2012 Attorney Leeper withdrew as counsel for Derek C.  Court records indicate that Derek C.'s postconviction motion was denied on January 7, 2013.

¶17  Returning to the matter now before this court, the OLR filed a disciplinary complaint against Attorney Thompson on October 24, 2011.  The complaint alleged that the September 29, 2008 letter to the court violated four ethical rules:

(1) Attorney Thompson violated SCR 20:1.6(a)[2] by revealing information relating to a former client without the client's informed consent (Count One);

(2) Attorney Thompson violated SCR 20:1.9(c)(1)[3] by using information relating to a former client to the disadvantage of such client (Count Two);

(3) Attorney Thompson violated SCR 20:1.9(c)(2)[4] by revealing information relating to the representation of a former client (Count Three); and

---

[2] SCR 20:1.6(a) states that "[a] lawyer shall not reveal information relating to the representation of a client unless the client gives informed consent, except for disclosures that are impliedly authorized in order to carry out the representation, and except as stated in pars. (b) and (c)."

[3] SCR 20:1.9(c)(1) states as follows:

A lawyer who has formerly represented a client in a matter or whose present or former firm has formerly represented a client in a matter shall not thereafter:

(1) use information relating to the representation to the disadvantage of the former client except as these rules would permit or require with respect to a client, or when the information has become generally known.

[4] SCR 20:1.9(c)(2) provides as follows:

A lawyer who has formerly represented a client in a matter or whose present or former firm has formerly represented a client in a matter shall not thereafter:

. . . .

(2) reveal information relating to the representation except as these rules would permit or require with respect to a client.

(4) Attorney Thompson violated SCR 20:1.16(d)[5] (declining or terminating representation) (Count Four).

¶18 The OLR sought a public reprimand and payment of costs, which total $10,304.44 as of December 13, 2012.

¶19 The court appointed Referee James G. Curtis who conducted an evidentiary hearing on May 14, 2012. Following post-hearing briefing, the referee issued a report and recommendation dated August 2, 2012. The referee concluded that the OLR had proven Counts One through Three of the complaint, but failed to prove Count Four. The referee recommended the court publicly reprimand Attorney Thompson and impose costs.

¶20 Attorney Thompson appeals.[6] We will affirm a referee's findings of fact unless they are clearly erroneous. In re Disciplinary Proceedings Against Inglimo, 2007 WI 126, ¶5, 305

---

[5] SCR 20:1.16(d) states:

Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled and refunding any advance payment of fee or expense that has not been earned or incurred. The lawyer may retain papers relating to the client to the extent permitted by other law.

[6] The OLR does not appeal the referee's conclusion that Attorney Thompson did not violate SCR 20:1.16(d) (Count Four). On January 9, 2013, Attorney Thompson moved to stay the court's decision pending a decision in another matter pending before the OLR, together with a motion for leave to file a supplemental appendix. We denied the motion to stay on March 12, 2013; and we accept the supplemental appendix.

Wis. 2d 71, 740 N.W.2d 125. We consider the referee's conclusions of law de novo. Id.

¶21 We accept the referee's findings of fact and reject Attorney Thompson's challenge to several of the referee's factual findings. While there are some discrepancies between the referee's findings and Attorney Thompson's own perspective on events, the discrepancies are either of minor legal significance or do not bear on the allegations of ethical misconduct. We accept the referee's factual findings and consider the legal conclusions and recommendation for public discipline.

¶22 What can a lawyer permissibly disclose in response to a former client's claim of ineffective assistance of counsel? When a defendant charges that his or her attorney has been ineffective, the defendant's lawyer-client privilege is waived to the extent that counsel must answer questions relevant to the charge of ineffective assistance. State v. Flores, 170 Wis. 2d 272, 277-78, 488 N.W.2d 116 (Ct. App. 1992); see also Wis. Stat. § 905.03(4)(c) (the lawyer-client privilege is waived "[a]s to a communication relevant to an issue of breach of duty by the lawyer to the lawyer's client or by the client to the

client's lawyer").[7]  The question also implicates the lawyer's continuing duty of confidentiality.[8]

¶23 Supreme court rule 20:1.6, the confidentiality rule, provides, in relevant part:

> (a) A lawyer shall not reveal information relating to the representation of a client unless the client gives informed consent, except for disclosures that are impliedly authorized in order to carry out the representation, and except . . . .
>
> . . . .
>
> (c) A lawyer may reveal information relating to the representation of a client to the extent the lawyer reasonably believes necessary:
>
> . . . .
>
> (4) to establish a claim or defense on behalf of the lawyer in a controversy between the lawyer and the client, to establish a defense to a criminal charge or civil claim against the lawyer based upon conduct in which the client was involved, or to respond to allegations in any proceeding concerning the lawyer's representation of the client; . . . .

SCR 20:1.6(a) and (c)(4).

¶24 The published comment to SCR 20:1.6 further informs a lawyer's decision to disclose confidential client information in

---

[7] We deem unpersuasive the OLR's reliance on In re Disciplinary Proceedings Against O'Neil, 2003 WI 48, 261 Wis. 2d 404, 661 N.W.2d 813, where we concluded an attorney violated SCR 20:1.6 by disclosing his client's file and discussing its contents with the police department without obtaining client waiver.  That case did not involve allegations of ineffective assistance of counsel.

[8] The duty of confidentiality continues after the client-lawyer relationship has terminated.  SCR 20:1.6, ABA cmt. [18].

response to an exception set forth in SCR 20:1.6(c).  The comment states, as relevant here:

> Paragraph [(c) in the Wisconsin rule] permits disclosure only to the extent the lawyer reasonably believes the disclosure is necessary to accomplish one of the purposes specified.  Where practicable, the lawyer should first seek to persuade the client to take suitable action to obviate the need for disclosure.  In any case, a disclosure adverse to the client's interest should be no greater than the lawyer reasonably believes necessary to accomplish the purpose.  If the disclosure will be made in connection with a judicial proceeding, the disclosure should be made in a manner that limits access to the information to the tribunal or other persons having a need to know it and appropriate protective orders or other arrangements should be sought by the lawyer to the fullest extent practicable.

SCR 20:1.6, ABA cmt. [14].

¶25  It is undisputed that Attorney Thompson did not have the consent of Derek C., informed or otherwise, directly or by counsel, to send the letter to the court.  However, absent consent, SCR 20:1.6(c) authorizes disclosures a lawyer "reasonably believes necessary" to "respond to allegations in any proceeding concerning the lawyer's representation of the client."  SCR 20:1.6(c)(4).  The question then is whether Attorney Thompson's letter of September 30, 2008 transcended the boundaries of permissible disclosure in this case.  We conclude it did not.

¶26  The context in which Attorney Thompson opted to send the letter is of critical importance to our determination.

¶27 Attorney Thompson found his client, Derek C., uncooperative during their initial meetings.  Derek C. was not

10

forthcoming when asked about possible defenses. At one point Derek C. suggested that the victim's older brother, who allegedly witnessed the sexual assault, would change his story. Attorney Thompson became concerned that Derek C. intended to suborn perjury. Indeed, he later disclosed that much of his trial strategy was influenced by his efforts to manage this aspect of Derek C.'s defense. Some six months after commencing representation and only a few weeks before trial, Derek C. provided him with a possible alibi defense. Attorney Thompson duly filed a motion to extend the time for filing an alibi defense, investigated the matter, interviewed the named witnesses, and concluded the proffered alibi defense was not viable. He thus opted not to use the alibi defense at trial. He withdrew as counsel prior to sentencing.

¶28 The interactions between successor counsel, Attorney Leeper, and Attorney Thompson also influenced Attorney Thompson's decision to send the letter to the court. Between May and September 2008, Attorneys Leeper and Thompson exchanged a series of e-mails in which Attorney Leeper repeatedly requested the case file maintained by Attorney Thompson, including billing statements. Attorney Leeper asked questions about the trial proceedings and alluded to a likely ineffective assistance of counsel claim. Attorney Leeper repeatedly asked to meet with Attorney Thompson. Attorney Leeper also contacted the SPD for assistance obtaining the file. The SPD, in turn, contacted Attorney Thompson to confirm whether he had given Attorney Leeper the file.

11

¶29 Attorney Thompson had already given most of the case file to the lawyer who represented Derek C. at sentencing. Attorney Thompson later acknowledged his irritation with the tendency of appellate counsel to pursue ineffective assistance of counsel claims. He sent the few file materials still in his possession to Attorney Leeper and basically advised Attorney Leeper to get on with the anticipated ineffective assistance of trial counsel claim. The e-mail exchanges between Attorney Leeper and Attorney Thompson reflect the two lawyers' fundamentally different perspectives regarding the viability of Derek C.'s alibi defense and the role of trial counsel in postconviction proceedings.

¶30 On July 7, 2008, Attorney Leeper filed the expected postconviction motion on behalf of Derek C. The motion was sweeping in its allegations of Attorney Thompson's alleged ineffective assistance. The motion stated:

> 1. Trial counsel did not spend sufficient time meeting with the defendant . . . .
>
> 2. Trial attorney failed to properly prepare the defendant to testify.
>
> 3. Trial counsel failed to investigate and explore the defendant's alibi defense.
>
> [4.] Trial counsel withdrew the defendant's alibi defense——the only defense the defendant had.
>
> 5. [Trial] counsel failed to interview, call, and prepare crucial witnesses.
>
> 6. Trial counsel failed to investigate and introduce evidence of other incidences of sexual assault of the victim.

12

7. Trial counsel failed to file the standard demand for discovery as provided for by sec. 971.23 Wis. Stats.

8. Trial counsel's failure to make a discovery request for exculpatory evidence under sec. 971.23 led to the inability to use clearly exculpatory evidence effectively.

9. Trial counsel failed to prepare a theory of the case or present a logical and consistent defense to the jury.

10. Trial counsel never made use of the presumption that an offer to take a polygraph supports the credibility of a witness.

¶31 Attorney Leeper did not provide Attorney Thompson with a courtesy copy of this motion. Attorney Thompson learned of the motion from the district attorney, who contacted him to discuss the alibi defense claims.

¶32 Attorney Thompson thought Attorney Leeper was intentionally and inappropriately excluding him from the postconviction process. He explained his perspective:

> [T]he status of a trial attorney in a Machner hearing is not that of just another witness; instead, that attorney has a status analogous to that of a necessary party to the proceedings, that his knowledge of the proceedings and claims against him cannot be limited by the court or anyone else in any way, that he has standing to assert his rights to be informed and to appear, and indeed, that it is even questionable if such attorney can properly be sequestered during the proceedings.

¶33 Attorney Thompson's concerns were exacerbated by Attorney Leeper's ensuing motions seeking to declare Attorney

13

Thompson as an adverse witness.[9]  Attorney Thompson felt that Attorney Leeper was "acting inappropriately trying to prejudice the court and exclude [Attorney Thompson's] proper role . . . ." He was disturbed by Attorney Leeper's strategy.  He was concerned the court would rule on the motions in advance of the hearing.  In this context, he sought and received permission from the court to respond to the extensive claims of his alleged ineffective assistance.  The fact that Attorney Thompson sought and obtained leave of the court to respond to the motions is critical to our ruling in this case.

¶34 Attorney Thompson's six-page, single-spaced letter directed to Judge Counsell was thorough in its response and admittedly scathing of both his former client and Attorney Leeper.  The letter included:

- Thorough discussion of Attorney Thompson's early communications with the client with reference to the defendant's father.

- Details of an early discussion with the client about alibi defenses, informing the court that the

---

[9] One motion entitled, "Motion for Rulings Prior to Hearing," sought to call Attorney Thompson as an adverse witness at the Machner hearing based on allegations that Attorney Thompson "refused to turn over the Defendant's trial file until appellate counsel pointed out the ethical obligation to do so and asked the State Public Defender to intervene. [Attorney Thompson] has also refused to talk with appellate counsel about the case and has said he will talk only in response to a subpoena."

defendant had never provided alibi information until the end of the June hearing.

- Reference to Attorney Thompson's March letter to the defendant, a confidential letter regarding plea discussions, and not a part of the court file.

- Describing his client's demeanor as "calm, deliberate, articulate, glib, impenetrable and cocky."

- Disclosing his conversations with potential alibi witnesses and noting the deficiencies in their recollections. He dismissed the experts retained by appellate counsel, questioning the integrity of their conclusions and suggesting that his own opinions on truthfulness should be admissible.

- Detailing his response to the director of the SPD, claiming that appellate counsel was developing a "new" case and telling her about the "exploding alibi" in this case. He stated that another witness, J.S., had perjured herself in an affidavit submitted by Mr. Leeper in support of the Motion for New Trial.

¶35 In assessing whether this letter violated SCR 20:1.6, the OLR and the referee relied on American Bar Association Formal Opinion 10-456, issued on July 14, 2010 (Formal Opinion).

¶36 The Formal Opinion concludes that a criminal defense lawyer accused of ineffective assistance of counsel by a former client cannot disclose confidential information to defend against the former client's claim of ineffective assistance of

counsel unless the disclosure is made in a court-supervised setting.  The Formal Opinion states:

> [A] lawyer may disclose information protected by the rule only if the lawyer "reasonably believes [it is] necessary" to do so in the lawyer's self-defense. The lawyer may have a reasonable need to disclose relevant client information in a judicial proceeding to prevent harm to the lawyer that may result from a finding of ineffective assistance of counsel. However, it is highly unlikely that a disclosure in response to a prosecution request, prior to a court-supervised response by way of testimony or otherwise, will be justifiable.

ABA Comm. on Ethics & Prof'l Responsibility, Formal Op. 10-456 (2010).    Referee Curtis deemed this opinion persuasive, concluding that "[p]ermitting disclosure of client confidential information outside court-supervised proceedings undermines important interests protected by the confidentiality rule."

¶37 Defense counsel preparing to respond to a motion alleging ineffective assistance of counsel must be mindful of continuing ethical obligations to former clients.  As written, however, Wisconsin's confidentiality rule does not limit permitted disclosures to a "court-supervised" setting.  We decline to impose this restriction on our rule generally or in this case specifically.  Moreover, the Formal Opinion issued after Attorney Thompson sent the September 29, 2008 letter; this ethical guidance was not available to Attorney Thompson when he sent the letter.

¶38  We turn to the question whether it was permissible for Attorney Thompson to reveal the contents of the September 29, 2008 letter.  A lawyer responding to claims of ineffective

16

assistance of counsel must limit his or her disclosures to the "extent the lawyer reasonably believes necessary." As the comment to SCR 20:1.6 cautions, a disclosure "adverse to the client's interest should be no greater than the lawyer reasonably believes necessary to accomplish the purpose." SCR 20:1.6, ABA cmt. [14]. In addition, as the referee correctly observes, it is not enough that Attorney Thompson genuinely believed the particular disclosure was necessary; the lawyer's belief must be objectively reasonable. See, e.g., SCR 20:1(l) (defining the term "reasonably believes" to mean that a lawyer believes the matter in question and that the circumstances are such that the belief is reasonable).

¶39 The OLR contends, and the referee agreed, that the disclosures in the letter were not objectively reasonable. The OLR asserts:

> Challenging a client's alibi, discussing conversation[s] with his client's family members, commenting on his client's demeanor and integrity, dismissing the testimony of potentially favorable defense witnesses, etc. directly impugned the client and improperly revealed critical information related to the representation. It is difficult to construct a more devastating attack by an attorney on his own client.

¶40 The referee agreed. He deemed the content and tone of Attorney Thompson's letter damaging to the former client's position and expressed concern that it provided the prosecution with a "road map" and undue advantage in the presentation of evidence at the Machner hearing. Indeed, the referee had harsh words for Attorney Thompson:

17

Mr. Thompson's letter represents his uncontrolled rant and musings about his representation of Derek C., and the efforts of Mr. Leeper, all in the context of Mr. Thompson's natural tendency to defend and vindicate his own conduct in the handling of the criminal trial. Both the content and tone of the letter were disparaging and tended to vilify and impugn the position of his former client. While Mr. Thompson clearly didn't agree with that position, he had an obligation to refrain from unfairly maligning Derek C.'s position before the Machner hearing was ever called to order. And contrary to Mr. Thompson's position, the content of the letter was not identical to the content of Mr. Thompson's Machner testimony had the 9/29/08 letter never been sent. This is because the content of the letter was not filtered through the adversary process, or the judiciary's role in limiting the extent of the defendant's waiver of the lawyer-client privilege.

¶41 Our rule does not limit permissible disclosures to judicially supervised settings so we reject that aspect of the referee's statement. We agree that the tone of the letter is abrasive and that Attorney Thompson expresses contempt for both his former client and successor counsel. This angry rhetoric pervades Attorney Thompson's appellate brief, as well. While unprofessional, it is not necessarily unethical.

¶42 We consider the context in which this letter was sent. Attorney Thompson was affronted that Attorney Leeper did not copy him on the court filings alleging, in extremely broad terms, that he rendered Derek C. ineffective assistance and seeking to limit his testimony in response to these claims. The referee observed that "[Attorney] Thompson was an important and essential witness at the Machner hearing, [but] he did not have the status of a 'necessary party.'" He was no longer counsel of record for Derek C. As such, Attorney Leeper was not required

18

to provide him with copies of the postconviction motions. To the extent he thought otherwise, Attorney Thompson was mistaken.

¶43 Generally, however, it is advisable and a matter of professional courtesy for postconviction/appellate counsel to provide former counsel with a copy of a motion alleging he or she rendered ineffective assistance. Certainly, Attorney Leeper's decision not to provide copies to Attorney Thompson contributed to Attorney Thompson's belief that Attorney Leeper was improperly seeking to interfere with his opportunity to respond to the allegations.

¶44 The OLR and the referee chastise Attorney Thompson for placing the desire to defend his professional reputation over the interests of his former client. Defending one's professional reputation is not among the permitted exceptions to the confidentiality rule. The record reflects, however, that Attorney Thompson's concerns were not solely for his reputation.

¶45 As the letter and the testimony at the ensuing Machner hearing make clear, Attorney Thompson thought his former client intended to suborn perjury; his trial strategy was deliberate and reflected an effort to manage this concern. A lawyer with a potentially perjurious client must contend with competing considerations——duties of zealous advocacy, confidentiality, and loyalty to the client on the one hand, and a responsibility to the courts and our truth-seeking system of justice on the other. State v. McDowell, 2003 WI App 168, ¶54, 266 Wis. 2d 599, 669 N.W.2d 204 (citing People v. DePallo, 754 N.E.2d 751, 753

19

(2001)). And, as the postconviction court would later observe, "[t]he perjury concerns were real."[10]

¶46 Part of appellate counsel's strategy appears to have been to vilify Attorney Thompson for failing to pursue Derek C.'s alibi defense, then aggressively seeking to limit any opportunity for Attorney Thompson to explain the professional rationale for his decision. Attorney Thompson asserts that "a petitioner [seeking] relief cannot allege that he was deprived of his constitutional rights and then invoke the shield of the attorney-client privilege to prevent an accurate determination of the merit of his claim," citing Waldrip v. Head, 532 S.E.2d 380 (2000) (quoting Roberts v. Greenway, 211 S.E.2d 764, 767 (1975).

¶47 The postconviction motion was utterly sweeping in its criticism of Attorney Thompson's representation of Derek C. at trial. It was foreseeable that responding, even in a limited way, to each of the many allegations of misconduct would necessitate significant disclosures.

¶48 Attorney Thompson was required to limit his confidential disclosures as reasonably necessary to respond to his former client's allegations. He was not, however, required to "fall on his sword" to enable his former client to obtain a new trial. See, e.g., Hicks v. Nunnery, 2002 WI App 87, ¶72,

_____

[10] We take judicial notice of the circuit court's disposition of the postconviction motion. State v. Copeland, No. 2006CF98, Order Denying PostConviction Motions (Clark County Cir. Ct., Jan. 7, 2013), Jon M. Counsell, presiding.

253 Wis. 2d 721, 643 N.W.2d 809 (rejecting the notion that an attorney facing a former client's allegations of ineffective assistance of counsel remains under a duty to "vigorously represent" the former client). Rather, the attorney's duty is to testify truthfully regarding his or her representation of the former client, so that the postconviction court can properly evaluate the defendant's Sixth Amendment claim.

¶49 Finally, we are mindful that Attorney Thompson did request and receive the circuit court's permission to address "certain motions and assertions that Attorney Leeper has been making" and "to respond to these and other issues by the close of business on Monday, September 29th."

¶50 We caution lawyers that a former client's pursuit of an ineffective assistance of counsel claim "does not give the lawyer carte blanche to disclose all information contained in a former client's file." See 2011 Formal Op. 16, North Carolina State Bar Ethics Opinion (January 27, 2012). Typically, the better practice is to wait for a subpoena and the Machner hearing before disclosing confidential client information. In the context of this particular case, we decline to hold that Attorney Thompson's letter of September 29, 2008 violated SCR 20:1.6(a).

¶51 The OLR also alleged, and the referee concluded, that Attorney Thompson violated SCR 20:1.9(c), entitled "Duties to former clients." The rule provides, as relevant here:

A lawyer who has formerly represented a client in a matter or whose present or former firm has formerly represented a client in a matter shall not thereafter:

(1) use information relating to the representation to the disadvantage of the former client <u>except as these rules would permit or require</u> with respect to a client, or when the information has become generally known; or

(2) reveal information relating to the representation <u>except as these rules would permit or require</u> with respect to a client.

(Emphasis added). Here, the conclusion that Attorney Thompson violated SCR 20:1.9 was predicated on a violation of SCR 20:1.6. As we have concluded that SCR 20:1.6 did not prohibit the disclosure at issue, we likewise conclude that Attorney Thompson did not violate SCR 20:1.9.

¶52 IT IS ORDERED that the complaint is dismissed. No costs.

¶53 ANN WALSH BRADLEY, J.   *(dissenting).*  I disagree with a majority of this court when it opines that the facts here do not constitute a violation of the confidentiality rule.

¶54 A fundamental principle in the attorney-client relationship is that, in the absence of the client's informed consent or a specific exception, the attorney must not reveal information relating to the representation.  This principle is essential to the trust that is the hallmark of the attorney-client relationship.

¶55 Supreme court rule 20:1.6, the confidentiality rule, embodies this fundamental principle.  It promotes competent and effective representation by encouraging clients to speak frankly with their attorneys while protecting clients from the disclosure of embarrassing and potentially legally damaging information.  It provides in relevant part:

> (a)  A lawyer shall not reveal information relating to the representation of a client unless the client gives informed consent, . . . except . . . .
>
> (c)  A lawyer may reveal information relating to the representation of a client to the extent the lawyer reasonably believes necessary: . . . .
>
> (4) . . . to respond to allegations in any proceeding concerning the lawyer's representation of the client . . . .

¶56 Here there is no dispute that the client did not give consent.  The issue then becomes whether the attorney's disclosure of information falls within the relevant exception in sub. (4).  I conclude it does not.  Because the September 29,

1

2008 letter falls outside of this recognized exception, I conclude that there was a violation of SCR 20:1.6.

¶57 The essence of the majority's analysis is that the disclosures were permitted here because the rule does not expressly limit permissible disclosures of attorney-client communications to only judicially supervised settings. ("Our rule does not limit permissible disclosures to judicially supervised settings . . . ." Majority op., ¶41; see also ¶51.)

¶58 Unlike the majority, I think that the only reasonable interpretation of sub. (4) is that the disclosure of information must be in a court setting, i.e. a judicially supervised setting. Subsection (4) allows for disclosure of information "to respond to allegations in any proceeding concerning the lawyer's representation of the client." Under the facts of this case, the appropriate proceeding is the Machner hearing, where the attorney responds to allegations of ineffective representation.[1]

¶59 As recognized by the majority, the referee had harsh words for Attorney Thompson. Majority op., ¶40. The referee admonished Thompson for "unfairly maligning Derek C.'s position before the Machner hearing was ever called to order." Id. Most importantly, the referee understood the importance of having the communication "filtered through the adversary process, or the judiciary's role in limiting the extent of the defendant's waiver of the lawyer-client privilege." Id.

---

[1] State v. Machner, 92 Wis. 2d 797, 285 N.W.2d 905 (Wis. App. 1979).

2

¶60 At a <u>Machner</u> hearing, the disclosure of information is subject to a judicial determination of relevance and privilege. The judicial proceeding provides a necessary check on the scope of the disclosure, assuring that the disclosure of confidential information involves only that which is necessary to resolve the claim.

¶61 Even if the majority were correct that disclosure is permitted outside of judicially supervised proceedings, it appears to me that the breadth of the disclosures in the September 29, 2008 letter went beyond the bounds reasonably necessary to respond to Thompson's pre-<u>Machner</u> motions.[2]

---

[2] Findings of Fact 45 of the Referee's Report states:

The 9/29/08 letter clearly revealed client information to the court, and much of it was in the nature of confidential information. There was a thorough discussion of Mr. Thompson's early communications with the client with reference to the defendant's father who "suspected that the children and the victim's family were engaged in sexual abuse." Mr. Thompson related an early discussion with the client about alibi defenses but informed the court that the defendant had never provided alibi information until the end of the June hearing. There is reference to Mr. Thompson's March letter to the defendant, a confidential letter regarding plea discussions which was certainly not a part of the court file. In addressing the defendant's lack of communication and cooperation, Mr. Thompson described his demeanor as "calm, deliberate, articulate, glib, impenetrable and cocky." Mr. Thompson disclosed his conversations with potential alibi witnesses and noted the deficiencies in their recollections. He dismissed the experts retained by appellate counsel, questioning the integrity of their conclusions and suggesting that his own opinions on truthfulness should be admissible. Mr. Thompson detailed his response to the Director of the State Public Defender, claiming that appellate counsel was developing a "new" case and telling her

¶62 The majority states that "[t]he fact that Attorney Thompson sought and obtained leave of the court to respond to the motions is critical to our ruling in this case." Majority op., ¶33. However, permission to respond to a motion is not permission to go beyond the limits of the confidentiality rule embodied in SCR 20:1.6, nor to violate the principles of attorney-client privilege.

¶63 The referee in this case agreed with the assertion of the OLR that the disclosures in the letter were not objectively reasonable. The OLR summarized the contents of the September 29, 2008 letter as follows:

> Challenging a client's alibi, discussing conversation[s] with his client's family members, commenting on his client's demeanor and integrity, dismissing the testimony of potentially favorable defense witnesses, etc. directly impugned the client and improperly revealed critical information related to the representation. It is difficult to construct a more devastating attack by an attorney on his own client.

Majority op., ¶39.

¶64 In arriving at the conclusion that the disclosures in the letter were not objectively reasonable, the referee made detailed findings of fact regarding the contents of the letter. See ¶61 n.2 supra. There is nothing to indicate that those findings are clearly erroneous.

---

about the "exploding alibi" in this case. He stated that another witness, [] had perjured herself in an affidavit submitted by Mr. Leeper in support of the Motion for New Trial.

4

¶65 Accordingly, for the reasons set forth above, I respectfully dissent.

¶66 I am authorized to state that CHIEF JUSTICE SHIRLEY S. ABRAHAMSON joins this dissent.

1